[Sac. No. 1445. In Bank.—January 18, 1906.]

CHARLES H. SPEAR et al., Board of State Harbor Com-
    missioners, Petitioners, v. TRUMAN REEVES, State
    Treasurer, Respondent.

SAN FRANCISCO SEA-WALL ACT—SUBMISSION TO PEOPLE—PUBLICATION
    —CONSTITUTIONAL LAW—DUTY OF GOVERNOR.—In submitting the
    "San Francisco Sea-Wall Act," providing for the issuance and sale
    of two million dollars in state bonds, to a vote of the people, under
    article XVI of the constitution, in the absence of a provision in
    the act for the publication required by that article, the duty to
    provide for the publication devolved upon the governor as the chief
    executive, whose duty under section 7 of article V of the constitu-
    tion is to see that the laws are faithfully executed.

ID.—ORDER TO SECRETARY OF STATE.—In discharging the duty of the
    governor it was not necessary that he should personally attend to
    the publication; but it was sufficient that he provided for its publi-
    cation by order to the secretary of state to make it.

ID.—OFFICIAL ATTESTATION NOT REQUIRED.—It is sufficient that in making the publication a true copy of the act was published for the required time and in the manner required by the constitution, which does not require that the act as published should be officially attested.

PETITION to the Supreme Court for Writ of Mandate to the State Treasurer.

The facts are stated in the opinion of the court.

Devlin & Devlin, and William H. Davis, for Petitioners.

U. S. Webb, Attorney-General, and George A. Sturtevant, Deputy Attorney-General, for Respondent.

LORIGAN, J.—This is an application for a writ of mandate to compel the respondent, as state treasurer, to proceed with the sale of certain bonds alleged to be salable under what is called the "San Francisco Sea-Wall Act." This act was passed March 20, 1903, (Stats. 1903, p. 247, c. 211,) and provided for the issuance and sale of state bonds, not exceeding the sum of two million dollars, for the payment of indebtedness to be incurred in the erection of a sea-wall and appurtenances in the city and county of San Francisco. As the indebtedness contemplated to be created by the act exceeded the sum of three hundred thousand dollars, it was essential, under article XVI of the constitution, that such act should be submitted to the people at a general election (and the act itself provided for such submission), and that it should receive a majority of all the votes cast for and against it at such election; the constitutional provision further declaring that "such law shall be published in at least one newspaper in each county, and city and county, if one be published therein, throughout the state for three months next preceding the election at which it is submitted to the people." At the general election held in the state November 8, 1904, the said act was submitted to the people for ratification. Prior to said general election the governor of the state, in his proclamation calling for such election, included therein the submission of the said "San Francisco Sea-Wall Act" to the people of the state, and such act was set out in full in said proclamation. Anterior

to the issuance of said proclamation said governor directed and empowered the secretary of state of the state of California to take all necessary steps to provide for the publication and cause to be published the said act in accordance with said article XVI of the constitution. This the secretary of state did by causing said act to be published in a newspaper published in each of the counties of the state of California for a period of three months next before the said election of November 8, 1904, save in the county of Alpine, where no newspaper was then being published. At said general election held on November 8, 1904, the said act was ratified by the people, receiving 119,460 votes in its favor, the number of votes against it being 26,835, and in due time, and according to law, the governor of the state issued a proclamation that said act was in full force and effect. Thereafter the respondent, the state treasurer, having prepared suitable bonds of the state of California, in accordance with the provisions of the said act, the petitioners, constituting the board of state harbor commissioners, as authorized by said act to do, adopted a resolution requesting the sale of two hundred and fifty of said bonds, and the governor of the state, as the act provided he should, directed in writing the said respondent to sell at public auction to the highest bidder, for cash, two hundred and fifty of the said bonds in one parcel, and that he give due notice of the time and place of the sale thereof, as provided in the act. The respondent having refused to take any steps towards the sale of said bonds, as requested by the state board of harbor commissioners, and as directed by the governor of the state, petitioners make this application for a writ of mandate to compel him to do so, and the matter is now before us on demurrer to the petition. The demurrer is general, and but one point is made under it, which is that the alleged "San Francisco Sea-Wall Act" has never been legally published. In support of this contention it is claimed by respondent that while the constitutional provision requires such an act to be published, no provision has in fact been made by law for such publication; that there is no statutory provision authorizing the secretary of state, or any other officer or person, to make the publication provided for in the constitutional provision; and that the act of the secretary of state in publishing the statute in question was unauthorized and

nugatory in as far as it purported to be a step towards its legal enactment. In the same line it is further claimed that, assuming the act could have been legally published by the secretary of state at the direction of the governor, still the publication as made (a copy of which appears in the petition for this writ) should have been accompanied by some certificate or attestation showing that the secretary of state was causing or directing the act to be published.

Neither of these points impress us as having any merit, and require but brief notice. It is true, as claimed by respondent, that the constitutional provision referred to is silent as to who shall make the required publication, and there is no general law upon the subject. The legislature assumed, without making express provision in the act itself therefor, that some executive officer of the state was charged with the duty of making the publication in conformity to the constitutional requirement. Petitioners contend that this assumption was well founded, and that the governor of the state, as its chief executive, in the absence of any direction to the contrary, was charged with this duty, and we think this position is sound. It is ordained by the constitution (art. V, sec. 1) that the supreme executive power should be vested in a chief magistrate, who shall be styled the "governor" of the state of California, whose duty it shall be, among other things, to see (art. V, sec. 7) that the laws are faithfully executed. This duty of enforcing or executing the laws enjoined on the governor applies not only to legislative enactments, but to constitutional provisions which are equally laws,—the organic law of the state,—and it is his duty to see that all are faithfully executed. Now, the constitutional provision authorizing the legislature to pass the act here in question conferred no power on that body to do anything relative to the publication of the act as far as the time or manner of its publication was concerned. The constitutional provision itself definitely fixed when and how that should be done, and the legislature could not interfere in the matter at all. All that the legislature could do, conceding it could do that, would be to make provision for the publication of the act. Such publication was made essential by the constitution in order to render the ratification of the act by the people effectual. Any direction which the legislature might have given in the act as to such

publication would have had the effect only of investing the officer designated for that purpose with the discharge of a mere executive duty—the duty of seeing that the law, the provision of the constitution, as to publication was carried out. But it by no means followed that because the legislature in the act itself failed to expressly designate some particular officer to make the publication the duty of doing so was not otherwise fully provided for. On the contrary, as the constitution in another provision had made the governor the chief executive officer of the state, to see that the laws were faithfully executed, and as this constitutional provision is one of the laws required by him to be so executed, it is quite obvious that, assuming the legislature could have designated some other officer, still, in the absence of such designation, it was the duty of the governor, in seeing that the laws were executed, to provide for the publication of the act, and having done so the constitutional mandate was legally carried out. In discharging his duty in this respect, it was not necessary that the governor should personally attend to the publication. It was sufficient that he provided for its publication, and this was accomplished when he directed the secretary of state to make it. As the original act of the legislature was in the official custody of the secretary of state, he was eminently a proper person to be designated to see that its correct publication was had.

Other reasons are urged by petitioners why the publication of this particular act, made by the secretary of state under the direction of the governor, should be sustained. It is insisted that as the act in question provided in terms for its submission to the people for ratification, and that the governor should include the submission of it to the people in his proclamation calling for the general election of November 8, 1904, such requirements impliedly directed the governor to take all necessary measures for a legal submission of it, including its publication, for the time and in the manner as directed by the constitutional provision.

It is further insisted that, when the legislature at the session subsequent to the publication of the act (Stats. 1905, p. 111, c. 115) appropriated money to pay the advertising done by the secretary of state in making such publication, this operated as a ratification of the action of the governor

and secretary of the state in that regard, or at least was a recognition that their act in publishing it was valid and within the scope of their executive duty—a recognition on the part of the legislative department of the state that the construction of the constitution by the governor in that particular was proper, and in accordance with the intention of the legislature. While these suggestions have much persuasive force, we do not discuss or indorse them, preferring to rest our conclusion upon the constitutional provision relative to the duties of the governor as chief executive, and which, in our judgment, authorized and required him to direct the publication of the act as it was done.

As to respondent's claim that the act as published by the secretary of state should have been accompanied by some certificate or attestation of that officer as to its authenticity. The demurrer concedes that a true copy of the act had been published for the required time and in the manner required by the constitution. This was all that that provision required. It was the act as passed by the legislature which was to be published. If it was contemplated that the act as published should be attested, the constitution would have said so. Being silent upon the subject, it must be assumed that it did not so intend.

This disposes of the only points made by respondent upon the demurrer, none of which in our judgment are tenable. As this application is for a peremptory writ after notice, and the matter is submitted on the pleadings, it is ordered that the peremptory writ of mandate issue as prayed for.

Beatty, C. J., Shaw, J., McFarland, J., Angellotti, J., and Henshaw, J., concurred.