[No. A034544. First Dist., Div. Three. July 15, 1987.]

NORWIN YOFFIE et al., Plaintiffs and Appellants, v.
MARIN HOSPITAL DISTRICT et al., Defendants and Respondents.

COUNSEL

Judith R. Epstein, George A. Markell, Crosby, Heafey, Roach & May and James R. Wheaton for Plaintiffs and Appellants.

Joseph T. Francke as Amicus Curiae on behalf of Plaintiffs and Appellants.

Carr, McClellan, Ingersoll, Thompson & Horn, David C. Carr, Quentin L. Cook, Mark D. Hudak, Hanson, Bridgett, Marcus, Vlahos & Rudy, John J. Vlahos, Duane B. Garrett and David W. Baer for Defendants and Respondents.

OPINION

SCOTT, J.—This is an appeal from a judgment denying a petition for writ of mandate. The sole question is whether a private, nonprofit, public-benefit corporation which operates Marin General Hospital pursuant to the terms of a 30-year lease from the Marin Hospital District is subject to the open meeting requirements of the Ralph M. Brown Act (the Brown Act or the Act). (Gov. Code, § 54950 et seq.)[1] For reasons which we will explain, we conclude that it is not, and affirm the judgment.

*The Facts*

The Marin Hospital District (the District) was organized in 1946 under the provisions of the Local Hospital District Law (Health & Saf. Code,

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

§ 32000 et seq.). The District established, owned, and, until recently, operated Marin General Hospital (the hospital) in San Rafael.

The elected board of directors of a hospital district is charged with operating all district-owned hospitals. (Health & Saf. Code, § 32125.) The board may provide for that operation through tenants, and may enter into a lease for the operation of an entire hospital for up to 30 years. (Health & Saf. Code, § 32126.) In addition, a district may transfer, with or without consideration, all of its assets to a nonprofit corporation "to operate and maintain the assets for the benefit of the communities served by the district." (Health & Saf. Code, § 32121, subd. (p)(1).)

The Legislature's stated reason for allowing such transfers is to permit local hospital districts "to remain competitive in the ever changing health care environment . . . ." (Stats. 1985, ch. 382, § 5, p. 1556.) The Legislature's statement of purpose does not explain how the transfer of assets improves the competitive posture of hospital districts, but declarations which appear in the record in this case provide some insight into the plight of district hospitals as of the date of the transfer involved here. According to those declarations, recent years have brought changes in how government agencies and insurance companies reimburse hospitals for services, fewer government restrictions on hospital construction and expansion, and technological advances. These factors have all combined to increase competition among hospitals. In this atmosphere, district hospitals were at a disadvantage for two reasons. Because of open meeting and public disclosure requirements, their private competitors were able to become informed about their economic strategies and plans.[2] In addition, constitutional prohibitions on stock ownership and lending of credit by the state and its subdivisions (Cal. Const., art. XVI, § 6) inhibited districts from participating in partnerships with private investor groups to purchase equipment or facilities or in other joint ventures.

Faced with these pressures, in November 1985, after several months of discussion and public meetings, the District's board agreed to lease the hospital for 30 years to a nonprofit, public-benefit corporation named Marin General Hospital (MGH), for the purpose of operating and maintaining the facility as a nonprofit community hospital for the benefit of the communities served by the District. The District also transferred certain of its assets to MGH, which assumed the debts and liabilities of the District related to the operation of the hospital.

---

[2] As will be discussed *infra,* in 1986 the Legislature addressed this problem by providing for district hospitals a limited exception to statutory requirements for open meetings and public records. (Stats. 1986, ch. 185.)

MGH is managed by a 12-person board of directors. The District has no power to appoint any of those board members. Nevertheless, the lease was contingent on the District's approval of MGH's initial board of directors, which did include two members of the District's then current board.

Thereafter, appellants Norwin and Sandra Yoffie, taxpayers and residents of the District, filed a complaint for declaratory relief and a petition for writ of mandate against the District, MGH, and their respective boards, among others. Appellants sought an order commanding the MGH board and the other defendants to comply with the open meeting requirements of the Brown Act. After a hearing, the trial court issued a statement of tentative decision and denied the petition, and this appeal followed. With this court's permission, an amicus brief has been filed on behalf of appellants by the California Newspaper Publishers Association and an association of professional journalists.

*Discussion*

a. *Introduction*

Initially, we emphasize that neither the legality nor the wisdom of the District's lease of its hospital is at issue in this case. As the trial court noted in its statement of tentative decision, the Legislature has specifically approved the transfer of a hospital district's assets to a nonprofit corporation for operation and management for periods of up to 30 years. Appellants have not challenged the legality of the agreement between the District and MGH. ▋ The only question in this case is whether MGH is subject to the open meeting requirements of the Brown Act.[3]

The answer to that question requires the application of settled principles of statutory construction. ▋ The first such principle is that this court must determine the Legislature's intent so as to effectuate the law's purpose. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].) If the statutory language is clear and unambiguous, a court will look no further to determine its meaning. (*Building Industry Assn.* v. *City of Camarillo* (1986)

---

[3] The sole member of MGH is Marin Health Systems, Inc., a California nonprofit public benefit corporation. Marin Health Systems is also the sole member of two other nonprofit corporations, Marin General Hospital Foundation, a corporation which solicits funding for the hospital, and Marin Home Care, Inc., which provides in-home patient care. In addition to MGH, the District, and their boards, appellants also named as defendants Marin Health Systems, Inc., and its board members, as well as Marin General Hospital Foundation, Marin Home Care, Inc., and Henry Buhrmann, executive director of the hospital, but appellants provide us with no theory upon which to base a conclusion that these individuals and corporations are subject to the Brown Act.

41 Cal.3d 810, 819 [226 Cal.Rptr. 81, 718 P.2d 68].) ■ But we cannot read words or sections of statutes in isolation. Every statute must be construed with reference to the whole system of law of which it is a part, so that each part may be harmonized and have effect. (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274, fn. 7 [118 Cal.Rptr. 249, 529 P.2d 1017].) The various parts of a statute must be harmonized by considering each section in the context of the statutory framework as a whole. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) This rule applies even if the statutes to be harmonized appear in different codes. (*Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 274, fn. 7.) Significance should be given to every part of an act, if possible, and construction making words surplusage should be avoided. (*Palos Verdes Faculty Assn., supra,* 21 Cal.3d at p. 659.) ■ Where a general statute standing alone would include the same matter and conflict with a special statute, the special act will be considered as an exception to the general, whether it was passed before or after the general enactment. (*People* v. *Watson* (1981) 30 Cal.3d 290, 295 [179 Cal.Rptr. 43, 637 P.2d 279].)

■ In addition, we must assume that the Legislature has in mind existing law when it passes a statute. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) The fact that a prior act was amended demonstrates legislative intent to change preexisting law, and we must presume that material changes in the language of an act were intended to change the law. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231 [273 P.2d 5].)

The Legislature's aim in enacting the Brown Act is stated in section 54950: "... the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly ...." To further that goal, section 54953 mandates that "[a]ll meetings of the *legislative body* of a *local agency* shall be open and public ... except as otherwise provided in this chapter." (Italics added.)

Both "local agency" and "legislative body" are defined in the Brown Act. The basic definition of a "local agency" appears in section 54951: "... a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency." The Act also makes certain private entities "local agencies" within its scope. For example, the term "local agency" includes "any nonprofit corporation, created by one or more local agencies, any one of the members of whose

board of directors is appointed by such local agencies and which is formed to acquire, construct, reconstruct, maintain, or operate any public work project." (§ 54951.7; see also § 54951.1 [local agency includes private non-profit corporations which receive certain federal funds].)

The basic definition of "legislative body" appears in section 54952, which provides in pertinent part that the term means "the governing board [or] directors ... of a local agency ... and shall include any board ... on which officers of a local agency serve *in their official capacity as members* and which is supported in whole or in part by funds provided by such agency, whether such board ... is organized and operated by such local agency or by a private corporation." (Italics added.) In 1981 the term "legislative body" was broadened to encompass "any board, commission, committee, or similar multimember body which exercises any authority of a legislative body of a local agency *delegated to it by that legislative body*." (§ 54952.2; Stats. 1981, ch. 968, § 25, p. 3694, italics added.)

b. *Section 54952*

 The District is a local agency under section 54951, but MGH is not a local agency under any section of the Act. It does not qualify as such under section 54951.7 because it was not created by the District and none of its board members were appointed by the District or any other local agency; section 54951.1 is also inapplicable. The question, then, is whether MGH or its board can be deemed the legislative body of the District under any section of the Act. We first consider appellants' contention that MGH is a legislative body within the meaning of section 54952 because the two District board members who were appointed to the initial MGH board are serving on that board in their *official capacity* as District board members.

The Brown Act does not define the term "official capacity," and we find no case interpreting that term, but its meaning was considered in 67 Ops.Cal.Atty.Gen. 487 (1984). SEDCORP, a private nonprofit corporation, was created to attract business to Solano County. The Attorney General was asked whether SEDCORP was subject to the Brown Act because seven of its thirty-six directors were appointed by the city councils of several Solano County cities, and two were appointed by the county board of supervisors. The Attorney General concluded these individuals were not serving in their official capacities on SEDCORP's board, for several reasons. No law required county or city officers to serve on SEDCORP's board, SEDCORP's charter or bylaws did not impose such a requirement, and appointees of the county or of the city were not appointed to represent the interests of their appointing entities. (*Id.,* at p. 490.)

Application of a similar analysis here shows even less connection between the District and MGH's board than existed among the public entities and the private board of SEDCORP. The District did not appoint its board members to MGH's board and has no power to appoint anyone to that board. Although the MGH bylaws do require the appointment of certain persons to its board to serve in their official capacities, such as the president of the hospital medical staff, there is no requirement for the appointment of any District board member. Finally, there was no evidence that the District board members were appointed to the MGH board to represent the District's interests. The trial court did not err in concluding that the two District board members were not serving in their official capacities on the MGH board; thus the MGH board is not a legislative body of the District under section 54952.

c. *Section 54952.2*

Appellants also contend that the District has delegated its authority to operate the hospital to MGH, making the board of the nonprofit corporation a legislative body of the District under section 54952.2. The trial court rejected appellants' reliance on this section. It reasoned that the section applies only when the legislative or governing body of a local agency delegates its authority, not when the authority of the agency itself is delegated. The distinction drawn by the court is difficult to understand or to apply, as a district can only act through its board. Nevertheless, it is the trial court's decision which we evaluate in this appeal, not its reasoning. (See *Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 779 [108 Cal.Rptr. 828, 511 P.2d 1180].)

Among their arguments, respondents urge that section 54952.2 was intended to apply only to the delegation of authority to executive committees or "similar subparts" of existing legislative bodies, and not to boards of private corporations. Read in isolation, section 54952.2 contains no such limitation. It refers broadly to delegation of authority to "*any* board, commission, committee, or similar multimember body . . . ." (Italics added.) If we assume for the sake of argument that what occurred here can be characterized as a delegation of certain of its authority by the District's board to MGH's board, section 54952.2 might seem to compel the conclusion that the MGH board is a legislative body of the District.

That conclusion would ignore the more narrow and specific sections of the Act which pertain to private organizations and corporations. We cannot read section 54952.2 out of context, but must consider and harmonize, if possible, all the sections of the Act. Among the sections explicitly mentioning private organizations is section 54952. As already discussed, according

to that section, if the officers of a local agency serve in their official capacities on the board of a private corporation, and if the local agency supports that private entity in whole or in part, the board of the private corporation is a legislative body of the local agency and is therefore subject to the open meeting requirements of the Act.

In addition, the Act is explicit that certain private nonprofit organizations and corporations are local agencies within its reach. According to section 54951.1, all private nonprofit organizations that receive money to be expended for public purposes pursuant to the "Economic Opportunity Act of 1964" are local agencies. As noted at the outset of this discussion, section 54951.7 makes a nonprofit corporation a local agency within the Act if (1) it is created by a local agency; (2) any one of its board members is appointed by the local agency; and (3) it is formed to acquire, construct, reconstruct, maintain or operate any public works project. If an entity qualifies as a local agency under sections 54951.1 or 54951.7, its board would necessarily be subject to the Act as the legislative body of that local agency. (§ 54952.)

In sum, it appears that when the Legislature intended a private entity to be deemed a local agency, or the board of a private corporation to be deemed the legislative body of a local agency within the meaning of the Act, the Legislature specifically so stated. Under settled principles of statutory construction, to the extent that these specific statutes dealing expressly with the subject of private corporations and organizations are inconsistent with section 54952.2, they must be read as exceptions to that more general statute, even if the latter statute, standing alone, seems broad enough to include that subject. The inconsistency resulting from appellants' interpretation of section 54952.2 is apparent. Under section 54951.7, not every nonprofit private corporation which operates a public works project is a local agency within the meaning of the Act. At the same time, appellants' reading of section 54952.2 would make the board of every such corporation subject to the Act. Given that inconsistency, the more narrow statute is controlling, and the trial court did not err in concluding that section 54952.2 is inapplicable in this case.[4]

We recognize that our analysis of these statutes is inconsistent with that expressed in a recent Attorney General's opinion filed April 1, 1987, which

---

[4]Respondents also argue that section 54952.2 is inapplicable because MGH operates the hospital not with authority delegated to it by the District, but with authority bestowed upon it to conduct a business by the Corporations Code. (See Corp. Code, § 5140.) Relevant to that argument is the requirement that any person, corporation, or governmental entity which operates a hospital must have a state license, and such licenses are not transferable. (Health & Saf. Code, § 1265 et seq.; Cal. Admin. Code, tit. 22, §§ 70103, 70104, 70125.) Nevertheless, as we have concluded that section 54952.2 is inapplicable for other reasons, we need not attempt to draft an exhaustive definition of the term "delegate."

also considers the applicability of the Brown Act to the board of a private nonprofit corporation. The corporation at issue in that opinion is Oakland-Alameda Coliseum, Inc., which was formed by six private citizens in 1961 to acquire property and construct a multipurpose public recreation coliseum and stadium in Oakland, and to conduct the business affairs of the complex so as to ultimately vest title in the City of Oakland and the County of Alameda. Pursuant to the terms of a lease purchase agreement with the city and the county, the private corporation currently operates the coliseum complex. Eventually, in 2003, the complex will be both owned and operated by the city and county. (70 Ops.Cal.Atty. Gen. 57, 59 (1987).) We will refer to the Attorney General's opinion as *Coliseum.*

In *Coliseum,* the Attorney General concludes that the board of Oakland-Alameda Coliseum, Inc., is subject to the open meeting requirements of the Brown Act. Although the private corporation was formed to construct, maintain and operate a public works project, it is not a local agency as defined by section 54951.7 because it was not formed by a local agency and no member of its board was appointed by any such agency. (*Coliseum, supra,* at pp. 60-61.) Nor does the corporation or its board come within any of the other Brown Act provisions explicitly mentioning private or nonprofit corporations. Nevertheless, the Attorney General concludes that the board is subject to the Act pursuant to section 54952.2 because it exercises authority of legislative bodies, which has been delegated to it by those bodies (the City of Oakland and the County of Alameda).

In his analysis, the Attorney General acknowledges the principle that a specific statute must be read as an exception to an inconsistent general statute, but reasons that the principle is inapplicable because sections 54951.7 and 54952.2 are not inconsistent. The opinion states: "It is readily seen that there is no conflict between the language of sections 54951.7 and 54952.2. The former merely sets forth criteria for including certain nonprofit corporations within the scope of the Ralph M. Brown Act. The latter provision merely provides that certain multi-member bodies will be considered 'legislative bodies.' *Section 54952.2 is coincidentally broad enough to include those nonprofit corporations included within the scope of 54951.7 which have been delegated powers of 'legislative bodies.' In short, there is no conflict between these sections. There is at most an overlap in these statutory provisions.*" (*Coliseum, supra,* at p. 63, italics added.)

If reasonably possible, statutes should be reconciled and harmonized, rather than read as antagonistic. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965[131 Cal.Rptr. 172].) Nevertheless, statutes should also be construed to give meaning to every word and provision, and to avoid making any provision surplusage or nuga-

tory. (*People* v. *Craft* (1986) 41 Cal.3d 554, 560[224 Cal.Rptr. 626, 715 P.2d 515]; *Sullivan* v. *Fox* (1987) 189 Cal.App.3d 673, 678[235 Cal.Rptr. 5]; *Leeth* v. *Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1550, 1556[231 Cal.Rptr. 468].) The Attorney General's conclusion that sections 54951.7 and 54952.2 are not in conflict overlooks the latter principle.

As we have explained, according to section 54951.7, only certain non-profit private corporations which operate a public works project are local agencies under the Act. But if section 54952.2 applies to private corporations, every such corporation which operates a public works project will be subject to the Act despite section 54951.7. If that is the case, then the specific and narrow guidelines articulated in section 54951.7 are surplusage and inconsequential.

■ Another principle of statutory construction is pertinent here. Where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. (See *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) The stated purpose of the Brown Act is to ensure that the actions of *public* agencies are taken openly and their deliberations are conducted openly. (§ 54950.) The general rule, then, is that the Brown Act applies to public rather than private entities. As discussed, there are a few exceptions to that general rule, as under certain circumstances private corporations or their boards must comply with the Act. But where the Legislature has intended private entities to come within the reach of the Act, it has explicitly so stated. (See, e.g., §§ 54951.1, 54951.7, 54952.) Accordingly, it should not be presumed or implied that sections which do not expressly refer to private entities encompass such entities. The Attorney General's opinion acknowledges the existence of this principle in a footnote (*Coliseum, supra,* at p. 63, fn. 8), but does not discuss its applicability.

■ While opinions of the Attorney General are entitled to " 'great respect,' " they are not binding on this court. (See *King* v. *Central Bank* (1977) 18 Cal.3d 840, 844 [135 Cal.Rptr. 771, 558 P.2d 857].) ■ The statutes are far from clear and the matter is not entirely free from doubt, but we have concluded that the Attorney General's analysis of the Brown Act is incorrect.

d. *Local Hospital District Law*

Our conclusion with respect to legislative intent is reinforced by tracing recent amendments to the Local Hospital District Law. (Health & Saf. Code, § 32000 et seq.) In 1982, with an amendment to Health and Safety Code section 32121, the Legislature first authorized a hospital district to

transfer, without consideration, for operation and maintenance, *part* of its assets to a nonprofit corporation. (Stats. 1982, ch. 1594, § 8, p. 6306.) In 1983 that section was amended to permit a district to transfer all of its assets, but only to a nonprofit corporation with *"directors who are appointed by the board* of directors of the hospital district . . . ." (Stats. 1983, ch. 836, § 1, p. 3010, italics added.) With that amendment, the transferee corporation was likely to be deemed a local agency within the meaning of section 54951.7 (local agency includes nonprofit corporation "any one of the members of whose board . . . is appointed by such local agencies . . ."). In 1985, however, Health and Safety Code section 32121 was again amended to permit a transfer with or without consideration. As amended, the section also no longer requires that the district appoint the board members of the transferee corporation. Instead, it plainly states, "The *initial members* of the board of directors of the nonprofit corporation . . . shall be *approved* by the board of directors of the hospital district . . . ." (Health & Saf. Code, § 32121, subd. (p)(1), italics added.)

As mentioned, the stated purpose for allowing transfers was to enable local hospital districts to remain competitive with nonpublic hospitals. There is no explicit reference to the open meeting requirements of the Brown Act in the 1985 amendments to the Health and Safety Code. The uncodified legislative findings which appear in the statutes at large indicate that the Legislature's primary concern was to clarify that a district board could not transfer its assets *and* dissolve the district without approval of the voters. (Stats. 1985, ch. 382, § 5.) Nevertheless, we must presume that the Legislature had in mind the requirements of the Brown Act and in particular of section 54951.7 when it changed Health and Safety Code section 32121, subdivision (p). We must also presume that when the Legislature changed that language, it intended a substantive change in the law. ■ The Legislature apparently intended not only to permit district hospitals to enter into a lease and transfer agreement such as that at issue here, but also to permit the transferee corporation to operate free from the open meeting requirements of the Brown Act, provided the District did not retain power to appoint the transferee corporation's board. As is frequently the case, the Legislature could have spelled out its intent with more precision and in more detail. Nevertheless, appellants offer no other plausible explanation for this statutory change.

e. *1986 Legislation*

We agree with respondents that the foregoing amendments to the Health and Safety Code evidence the Legislature's determination that the open

meeting requirements of the Brown Act must yield to some extent in light of the unique competitive problems of hospital districts. Additional legislative action which occurred after the trial in this case confirms that interpretation of legislative intent.

In 1986, in express recognition of the competitive pressures in the health care industry, the Legislature created an exception to open meeting requirements for district hospitals. A district hospital's board may now order a closed session to discuss or deliberate on hospital trade secrets where necessary to initiate a new hospital service or program or add a hospital facility, and which would, if prematurely disclosed, create a "substantial probability of depriving the hospital of a substantial economic benefit." (Health & Saf. Code, § 32106, subd. (c)(2).) In justification of its action, the Legislature found and declared, "[D]istrict hospitals are increasingly put into competitive positions with nonprofit and proprietary hospitals. [¶] Because district hospitals are subject to public meeting and disclosure laws, they are, with growing frequency, forced to disclose financial and planning information ... which ... is of value to competing hospitals. [¶] Therefore, it is necessary in the interest of providing healthy competition for health care services to provide a limited exemption for district hospitals for purposes of the laws pertaining to open meetings and public records." (Stats. 1986, ch. 185, § 1.)

As respondents point out, it appears that after the effective date of this legislation, a district hospital facing competitive pressures may either continue to operate its hospital and take advantage of the trade secrets exemption to the Brown Act, or transfer its assets to a nonprofit corporation for operation and maintenance of the hospital. The first option would allow a district to retain control over its hospital, but the district would still be subject to the constraints of article XVI, section 6 of the California Constitution. The second option would free the hospital from those constraints but would lessen the district's influence. Obviously the first option was not available to the District when it agreed to the lease with MGH. Nevertheless, there is nothing in the recent amendments to change the conclusion that MGH is not subject to the Brown Act.

f. *Conclusion*

In summary, when we apply settled principles of statutory construction and read the Brown Act together with the Local Hospital District Law, we conclude that the trial court did not err in holding that respondents are not subject to the requirements of the Brown Act.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 1, 1987. Arguelles, J., was of the opinion that the petition should be granted.