TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 92-804 |
| of | : | |
| | : | NOVEMBER 12, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE JOHN R. LEWIS, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Are the meetings of a task force comprised of private citizens appointed by the State Insurance Commissioner to render advice on public policy issues, which operates under the direction and timetable of the commissioner and receives its resources from the Department of Insurance, required to be open to members of the public?

CONCLUSION

The meetings of a task force comprised of private citizens appointed by the State Insurance Commissioner to render advice on public policy issues, which operates under the direction and timetable of the commissioner and receives its resources from the Department of Insurance, are not required to be open to members of the public.

ANALYSIS

The State Insurance Commissioner holds elective office (Ins. Code, § 12900) and is responsible for administering the Department of Insurance (Ins. Code, § 12906). Among the commissioner's duties are: enforcing the laws regulating the business of insurance (Ins. Code, § 12921), disseminating information concerning insurance laws to the public (Ins. Code, §§ 12921.3, 12921.5), and submitting reports to the Governor showing the condition of the insurance business in California (Ins. Code, §§ 12922, 12960).

The question presented for resolution concerns a task force appointed by the commissioner to render advice on public policy issues. The task force is comprised of private citizens, operates under the specific direction and timetable of the commissioner, and is provided necessary resources by the Department of Insurance. Are the meetings of the task force required to be open to members of the public? We conclude that they are not.

The only "open meeting" statutory scheme arguably applicable to the commissioner's task force is the Bagley-Keene Open Meeting Act. (Gov. Code, §§ 11120-11132; hereafter "Act".)[1] It requires "state bodies" to hold their meetings open to the public unless specifically exempted in the Act. (See §§ 11123, 11126, 11132.) The Act's provisions are applicable to most state officers and agencies.[2]

As noted, the Act is only applicable to "state bodies." "State body" is defined in four of the Act's provisions: sections 11121, 11121.2, 11121.7, and 11121.8. Section 11121 provides the basic definition of a "state body" for purposes of the Act:

"As used in this article 'state body' means every state board, or commission, or similar multimember body of the state which is required by law to conduct official meetings and every commission created by executive order . . . ."

Section 11121.2 sets forth an additional definition for bodies which exercise delegated authority. It provides:

"As used in this article, 'state body' also means any board, commission, committee, or similar multimember body which exercises any authority of a state body delegated to it by that state body."

Section 11121.7 then follows with a definition of subsidiary bodies on which members of "state bodies" serve. It provides:

"As used in this article, 'state body' also means any board, commission, committee, or similar multimember body on which a member of a body which is a state body pursuant to Section 11121, 11121.2, or 11121.5 serves in his or her official capacity as a representative of such state body and which is supported, in whole or in part, by funds provided by the state body, whether such body is organized and operated by the state body or by a private corporation."[3]

And finally section 11121.8 delineates the advisory bodies which are to be considered "state bodies" for purposes of the Act:

"As used in this article, 'state body' also means any advisory board, advisory commission, advisory committee, advisory subcommittee, or similar multimember advisory body of a state body, if created by formal action of the state body or of any member of the state body, and if the advisory body so created consists of three or more persons."

---

1. All section references are to the Government Code unless otherwise indicated.

2. Special open meeting laws, for example, are applicable to the Legislature (§§ 9027-9031) and the Regents of the University of California (Ed. Code, §§ 92032-92033). Local public agencies are subject to the open meeting requirements of the Ralph M. Brown Act (§§ 54950-54962).

3. Section 11121.5, which was applicable to student organizations at state universities and community colleges, was repealed by Statutes of 1984, chapter 1158.

Looking first at section 11121, we find that the commissioner's task force is not one that "is required by law to conduct official meetings."  The meaning of this phrase was discussed in our publication, "Open Meeting Laws" (1989), as follows:

> " . . . It is presumed that a multi-member board created by statute is required by law to conduct meetings regardless of whether such an intention is expressed in the statute, since there would be no legislative purpose in creating a body which was not intended to meet.  Thus, the mere act of statutory creation satisfies the Bagley-Keene Act requirement to meet."  (Id., at p. 8.)[4]

Implicit in the requirements of the Act is that statutorily created bodies will act at meetings.  (See 68 Ops.Cal.Atty.Gen. 65, 69 (1985).)  Here, the task force in question was created by the commissioner, not created by statute; thus it is not "required by law to conduct official meetings." (§ 11121.)

Section 11121 also subjects "every commission created by executive order" to the requirements of the Act.  Is the commissioner's task force such a commission?  In 63 Ops.Cal.Atty.Gen. 583 (1980), we analyzed the general scope of "executive orders" as follows:

> "The Governor is authorized to issue directives, communicated verbally or by formal written order, to subordinate executive officers concerning the enforcement of law.  Such authority emanates from his constitutional charge, as the 'supreme executive power' of this state, to 'see that the laws are faithfully executed' (Cal. Const., art. V, § 1) and by the very dimension of government which necessitates and requires the assistance and participation of others.  Accordingly, Government Code section 12010 provides that '[t]he governor shall supervise the official conduct of all executive and ministerial officers.'  An executive order, then, is a formal written directive of the Governor which by interpretation, or the specification of detail, directs and guides subordinate officers in the enforcement of a particular law.  (Unpub. opn. of the Cal. Atty. Gen., No. I.L. 63-86 (1963).) Such an order, however, need not be predicated upon some express statutory provision, but may properly be employed to effectuate a right, duty, or obligation which emanates or may be implied from the Constitution or to enforce public policy embodied within the Constitution and laws.  (*Cf. In re Neagle* (1890) 135 U.S. 1, 63-64; *Spear* v. *Reeves* (1906) 148 Cal. 501, 504.)

> "Nevertheless, the Governor may not invade the province of the Legislature.  California Constitution, article III, section 3 provides as follows:

>> 'The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.'

> Consequently, the Governor is not empowered, by executive order or otherwise, to amend the effect of, or to qualify the operation of existing legislation.  (*Lukens* v. *Nye* (1909) 156 Cal. 498, 503-504; and *cf. Contractor's Ass'n of Eastern*

---

4.    A prior edition of this publication was quoted extensively and given "great weight" by the Court of Appeal in *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 882-883.

*Pa.* v. *Secretary of Labor* (1971) 442 F.2d 159, 168; unpub. opn. of the Cal. Atty. Gen., No. I.L. 78-32 (1978).)"  (*Id.*, at pp. 584-585.)

Accordingly, an executive order is generally regarded as "a formal written directive of the Governor."

Of course, the Legislature may define a particular term in any manner it chooses to effectuate its purposes.  (See *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 804; *Rideaux* v. *Torgrimson* (1939) 12 Cal.2d 633, 636; *In re Marriage of Stephens* (1984) 156 Cal.App.3d 909, 913.)  For example, for purposes of the state's program involving mandated local costs which was enacted in 1984 (§§ 17500-17630), the Legislature defined "executive order" in section 17516 as follows:

"Executive Order' means any order, plan, requirement, rule, or regulation issued by any of the following:

"(a)  The Governor.

"(b)  Any officer or official serving at the pleasure of the Governor.

"(c)  Any agency, department, board, or commission of state government. . . ."

The phrase "every commission created by executive order" was added to section 11121 in 1980.  (Stats. 1980, ch. 515, § 1.)  We have examined in detail the legislative history of the 1980 amendment.  It is clear that for purposes of the Act, the 1980 addition of "executive order" commissions refers solely to commissions appointed by the Governor.  The legislation was enacted in response to an opinion of the Legislative Counsel dated November 9, 1978, which stated in part:

"The Commission on Government Reform was created by the Governor by Executive Order No. B-45-78 and generally has as its function the making of recommendations to the Governor and the Legislature for permanent reforms in the tax, revenue, and spending systems of both state and local government as a result of the passage of Proposition 13 at the June 6, 1978, Primary Election.  In the performance of its tasks, it is required by the executive order to meet on a regular basis.

"Since the commission was created by executive order and not by statute, it is our opinion that the commission cannot be considered a 'state agency . . . <u>required by law</u> to conduct official meetings'  (emphasis added) for purposes of Section 11121.  The executive power of the Governor is to see to it that the law is faithfully executed (Sec. 1, Art. V, Cal. Const.).  The power to make law, on the other hand, is vested generally in the Legislature, with the people reserving to themselves the power of initiative and referendum (Sec. 1, Art. IV, Cal. Const.).  Accordingly, we conclude that meetings of the Commission on Government Reform are not required by the state open meeting law to be open to the public."

No suggestion is contained in the legislative history that an "executive order" is something other than a directive executed by the Governor.  Since the task force in question was not created by the Governor, section 11121 is inapplicable here.[5]

We next consider section 11121.2.  Is the task force one "which exercises any authority of a state body delegated to it by that state body"?  The commissioner is not a "state body" for purposes of the Act.  As we stated in our Open Meeting Laws publication, *supra*:

> "The Brown Act applies to the 'legislative bodies' of all local agencies in California as defined by this Act, e.g., councils, boards, commissions and committees.  (§§ 54951-54952.5, 54953.)  The Bagley-Keene Act applies to multi-member state bodies which are required to meet by law or which are created by executive order.  (§§ 11121, 11123.)  . . . .

> "Neither act applies to individual decision makers who are not members of boards or commissions such as agency or department heads when they meet with advisors, staff, colleagues or anyone else.  Similarly, neither act applies to multi-member bodies which are <u>created</u> by an individual decision maker.  (56 Ops.Cal.Atty.Gen. 14, 19 (1973).)  However, boards or commissions which are created by statute or ordinance are covered even if they are under the jurisdiction of an individual department head.  (§§ 54957.3, 11121, 11121.8.)" (*Id.*, at p. 8.)

Since the commissioner does not come within any of the definitions of a "state body," a task force appointed by him would not constitute a "state body" under the terms of section 11121.2.

Next we consider section 11121.7.  The task force in question is comprised of private individuals.  No one is a member of the task force who is "a member of a body which is a state body . . . [serving] in his or her official capacity as a representative of such state body . . . ."  (See *Farron* v. *City and County of San Francisco* (1989) 216 Cal.App.3d 1071, 1075-1076; *Yoffie* v. *Marin Hospital District* (1987) 193 Cal.App.3d 743, 750; 67 Ops.Cal.Atty.Gen. 487, 490 (1984).)  Plainly, the commissioner's task force does not come within the language of section 11121.7 under the facts we have been given.

Finally, we consider the language of section 11121.8.  While it expressly refers to an "advisory body," such body must be "created by formal action of the state body or any member of the state body" in order for it to come within the definition of section 11121.8.  As we have demonstrated, the commissioner is not a "state body" under the Act.  Nor is he a member of a "state body."  Consequently, his task force does not come within the language of section 11121.8.

In short, an advisory body to a single state officer is outside the scope of the open meeting requirements of the Act.  We reached a similar conclusion with respect to an advisory body to a county officer.  In 56 Ops.Cal.Atty.Gen. 14 (1973), we concluded that a local admissions committee appointed by and rendering advice to a county superintendent of schools was not subject to the open meeting requirements of the Ralph M. Brown Act.  We noted: "It is thus made clear that a local admissions committee is an advisory group, but only to a single county officer . . . [and hence] is only an advisory arm or adjunct to a single county officer."  (*Id.* at p. 16.)  In *Farron* v. *City and County of San Francisco, supra*, 216 Cal.App.3d 1071, the Court of Appeal ruled similarly

---

5.    Because of our interpretation of the term "executive order," we need not determine whether the task force constitutes a "commission" for purposes of section 11121.

with respect to an advisory committee appointed by a mayor as distinguished from being appointed by a city council or board of supervisors. "The board of supervisors is the legislative body of the city . . . under the Brown Act. . . . The task force at issue, however, was formed by the mayor . . . ." (Id., at p. 1075.)

We therefore conclude that the meetings of a task force comprised of private citizens appointed by the State Insurance Commissioner to render advice on public policy issues which operates under the direction and timetable of the commissioner and receives its resources from the Department of Insurance, are not required to be open to members of the public.

* * * * *