TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION : : of : : DANIEL E. LUNGREN Attorney General : : GREGORY L. GONOT Deputy Attorney General : : : | No. 93-704 October 15, 1993 |

THE HONORABLE DWIGHT HERR, COUNTY COUNSEL, COUNTY OF SANTA CRUZ, has requested an opinion on the following question:

Are counties which have assumed responsibility for enforcement of the State Employee Housing Act authorized to charge fees in amounts reasonably necessary to recover their costs of providing inspection and permit services, notwithstanding lower fee limits set by the Department of Housing and Community Development?

CONCLUSION

Counties which have assumed responsibility for enforcement of the State Employee Housing Act are authorized to charge fees in amounts reasonably necessary to recover their costs of providing inspection and permit services, notwithstanding lower fee limits set by the Department of Housing and Community Development.

ANALYSIS

We are advised that a county finds it necessary to increase the employee housing fees which it charges as part of its enforcement responsibilities under the State Employee Housing Act (Health & Saf. Code, §§ 17000-17062; "Act").[1]  The increase is sought on the basis of Government Code section 54985, subdivision (a), which provides in pertinent part as follows:

"Notwithstanding any other provision of law which prescribes an amount or otherwise limits the amount of a fee or charge which may be levied by a county, . . . a county board of supervisors shall have the authority to increase or decrease any such fee or charge, which is otherwise authorized to be levied by another provision

---

[1]All undesignated section references hereafter are to the Health and Safety Code.

of law, in the amount reasonably necessary to recover the cost of providing any product or service or the cost of enforcing any regulation for which the fee or charge is levied."

We are asked to determine whether such an adjustment in employee housing fees may be made notwithstanding the fact that it would exceed the fee schedule established by the Department of Housing and Community Development ("Department") and, in so doing, seemingly contravene those provisions of the Act which state that a city or county "may, by ordinance, establish a schedule of fees for the operation of employee housing not to exceed that which is established by the department" (§ 17050, subd. (d))[2] and that "the provisions of [the Act] . . . apply in all parts of the state and supersede any ordinances or regulations enacted by any . . . county . . . applicable to labor camps" (§ 17020, subd. (a)). The resolution of this question requires a brief discussion of the Act and the enforcement responsibilities that cities and counties may assume thereunder.

The Act seeks to protect the occupants of employee housing, including labor camps, from being subjected to substandard housing conditions. (See Stats. 1985, ch. 900, § 1.) Enforcement of the Act and the regulations adopted thereunder is carried out by the Department except where a city or county has assumed responsibility for enforcement within its jurisdiction. (§§ 17007, 17050.) A city or county may assume such responsibility upon written notice to the Department (§ 17050, subd. (b)), provided that it meets the conditions for assumption set forth in the Department's regulations (§ 17050, subd. (c)). As the enforcement agency, the city or county may conduct inspections of employee housing (§ 17050, subd. (i)), issue permits for the operation of employee housing (§ 17030), and bring civil actions for violations of the Act (§ 17060).[3] In order to pay for the costs of administration and enforcement, the city or county may, by ordinance, establish a schedule of fees not to exceed that which is established by the Department. (§§ 17036, 17050.) These fees are paid by the operators of the employee housing, and may not be charged to the residents thereof. (§ 17050, subd. (d).)

From the foregoing, it is evident that the Act authorizes a county to levy a fee and that section 17050, subdivision (d), serves to limit the amount of the fee. Thus, employee housing fees fall within the terms of Government Code section 54985. We turn to principles of statutory construction to determine the appropriate application of the competing statutes.

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. `In determining intent, we look first to the language of the statute, giving effect to its "plain meaning."'" (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized both internally and with each other to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "Where a general statute standing alone would include the same matter and conflict with a special statute, the special act will be considered as an exception to the general, whether it was

---

[2]The regulations promulgated by the Department appear at title 25, California Code of Regulations, sections 631-650. The fee schedule has not been changed since 1982. (See Cal. Code of Regs., tit. 25, § 637.)

[3]The Department monitors enforcement of the Act by cities and counties that have chosen to assume such responsibility, and it may cancel a local agency's authority in the event of nonenforcement. (§ 17050, subds. (e), (f).) A city or county may also cancel its responsibility by providing 30-days written notice to the Department. (§ 17050, subd. (h).)

passed before or after the general enactment."  (*Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748.)  "In addition, we must assume the Legislature had in mind existing law when it passes a statute."  (*Ibid.*)

In enacting Government Code section 54985, the Legislature recognized that the costs of enforcing any given regulation may change; it sought to give counties the flexibility to adjust state authorized fees up or down to reflect current costs.  If section 17050, subdivision (d), were construed as making such fees immutable by local enforcement agencies, there would be a direct conflict with Government Code section 54985, and in view of the "[n]otwithstanding any other provision of law" clause contained in the latter statute, Government Code section 54985 would be deemed controlling.  (See *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3; *State of California* v. *Superior Court* (1965) 238 Cal.App.2d 691, 695; 76 Ops.Cal.Atty.Gen. 4, 7 (1993).)  As stated in  *People* v. *Superior Court (Hubbard)* (1991) 230 Cal.App.3d 287, 296, quoting from 66 Ops.Cal.Atty.Gen. 27, 28-29 (1983):

> ". . .`This introductory phrase in a statute indicates legislative intent that the statute be exclusive or *sui generis*, and thus controlling over other statutes on the same subject. [Citations.]  The Legislature in enacting a statute is presumed to have knowledge of existing statutes.  [Citations.]'"[4]

Besides the plain meaning of the terms of Government Code section 54985, we see further evidence of the Legislature`s intent in the enumerated exclusions which appear in subdivision (c) of the statute.   Subdivision (c) provides that "[t]his chapter [Chapter 12.5, dealing with the authority of a county to impose various fees] shall not apply to" any of seven different types of specified fees which are authorized by statutory provisions.  Employee housing fees are absent from this list of excluded fees.  Since Government Code section 54985 was enacted in 1983, four years after passage of the Act and section 17050, we may assume that the Legislature was aware of employee housing fees but chose not to exempt them from the application of Government Code section 54985.

We reject the suggestion that Government Code section 54985 should yield to section 17050 because a city or county voluntarily assumes enforcement of the state program and may relinquish it to the state at any time.  Such a suggestion does not harmonize the two statutes, and it assumes that there is no benefit from local as opposed to state enforcement.  We are advised that some county programs have been in place for many years and continue to meet the Department's enforcement standards.  We find nothing in the Act to suggest that a county should be put to the choice of either remaining as the enforcement agency of the Act or covering its costs.[5]

Finally, we observe that the supersedure clause of section 17020 is directed at ordinances or regulations that are adopted by cities and counties and applicable to labor camps.  Such ordinances and regulations would be ostensibly those which are adopted pursuant to the

---

[4]This reading of the competing statutes would not permit counties to *arbitrarily* raise employee housing fees above the fee schedule prescribed by the Department.  First, the county would have to demonstrate at a public meeting that the adjusted amount was reasonably necessary to recover current costs of enforcement and, second, its judgment in that regard may be subject to review by the county auditor.  (Gov. Code, §§ 54985-54986.)

[5]An inability to charge fees in a sufficient amount to cover costs would likely produce inadequate staffing and other enforcement deficiencies which the Legislature sought to avoid through enactment of the Act's  provisions.  (See Stats. 1986, ch. 1495, § 1.)

general legislative authority of cities as separate political entities and counties as subdivisions of the state.  Certain fees levied by a county, however, are specifically authorized by state statute, and Government Code section 54985 provides that a county may adjust such fees in an amount reasonably necessary to recover the cost of enforcing any regulation for which the fee is levied.  Therefore, if section 17020 were to supersede an ordinance enacted pursuant to the authority of Government Code section 54985, it would also serve to override a state statute.  As section 17020 does not speak in terms of superseding other state statutes, it should not be deemed superior to Government Code section 54985, particularly since the latter statute clearly states that its provisions are applicable to fees levied by a county pursuant to another provision of law "[n]otwithstanding any other provision of law which prescribes an amount or otherwise limits the amount of a fee or charge which may be levied by a county . . . ."[6]

In light of the applicable principles of statutory construction and given the limited nature of the supersedure clause in section 17020, we conclude that counties which have assumed responsibility for enforcement of the Act may impose employee housing fees in accordance with the terms of Government Code section 54985, notwithstanding lower fee limits established by the Department.

* * * * *

---

[6]This interpretation still leaves section 17020 effective with respect to other procedural and substantive ordinances or regulations which a county may seek to make applicable to labor camps.