[No. S029178. Dec. 23, 1993.]

FREEDOM NEWSPAPERS, INC., Plaintiff and Appellant, v.
ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM BOARD
OF DIRECTORS, Defendant and Respondent.

**COUNSEL**

Helsing & Wray, Mark Cain, Mark Wray and Duffern H. Helsing for Plaintiff and Appellant.

Thomas W. Newton, Renee C. Allison, Harold W. Fuson, Jr., Judith L. Fanshaw, Debra Foust Bruns, Pillsbury, Madison & Sutro, Edward P. Davis, Jr., Judy Alexander, Cooper, White & Cooper, James M. Wagstaffe and Martin Kassman as Amici Curiae on behalf of Plaintiff and Appellant.

Terry C. Andrus, County Counsel, and Donald H. Rubin, Deputy County Counsel, for Defendant and Respondent.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, John M. Huntington, Assistant Attorney General, Joel S. Primes, Denise Eaton-May and Ted Prim, Deputy Attorneys General,

Hatch & Parent, Peter N. Brown and Kelly G. McIntyre as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**PANELLI, J.**—The Ralph M. Brown Act (Stats. 1953, ch. 1588, § 1, p. 3269, codified as Gov. Code, § 54950 et seq. [hereafter the Brown Act or the Act])[1] provides that all meetings of "the legislative body of a local agency shall be open and public," except as otherwise provided in the Act. (§ 54953.) At all times relevant to this case the Act contained four separate definitions of "legislative body."[2] We granted review to determine whether the Operations Committee of the Retirement Board of Orange County Employees Retirement System (hereafter Board) is a "legislative body" within the meaning of the Brown Act and, therefore, subject to the Act's

---

[1] All statutory references are to the Government Code unless otherwise noted.

A new law changing the relevant provisions of the Government Code was enacted while this case was pending. (Sen. Bill No. 1140 (1993-1994 Reg. Sess.), Stats. 1993, ch. 1138, eff. Apr. 1, 1994.) The impact of the new law is addressed in footnote 11, *post.* Except in that footnote, all references to the Government Code in this opinion are to the current version, i.e., the law as it will be until Senate Bill No. 1140 takes effect on April 1, 1994.

[2] Section 54952: "As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board or commission thereof, and shall include any board, commission, committee, or other body on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency, whether such board, commission, committee or other body is organized and operated by such local agency or by a private corporation."

Section 54952.2: "As used in this chapter, 'legislative body' also means any board, commission, committee, or similar multimember body which exercises any authority of a legislative body of a local agency delegated to it by that legislative body."

Section 54952.3: "As used in this chapter[,] 'legislative body' also includes any advisory commission, advisory committee or advisory body of a local agency, created by charter, ordinance, resolution, or by any similar formal action of a legislative body or member of a legislative body of a local agency. [¶] Meetings of such advisory commissions, committees or bodies concerning subjects which do not require an examination of facts and data outside the territory of the local agency shall be held within the territory of the local agency and shall be open and public, and notice thereof must be delivered personally or by mail at least 24 hours before the time of such meeting to each person who has requested, in writing, notice of such meeting. [¶] If the advisory commission, committee or body elects to provide for the holding of regular meetings, it shall provide by bylaws, or by whatever other rule is utilized by that advisory body for the conduct of its business, for the time and place for holding such regular meetings. No other notice of regular meetings is required. [¶] 'Legislative body' as defined in this section does not include a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body. [¶] The provisions of Sections 54954, 54955, 54955.1, and 54956 shall not apply to meetings under this section."

Section 54952.5: "As used in this chapter[,] 'legislative body' also includes, but is not limited to, planning commissions, library boards, recreation commissions, and other permanent boards or commissions of a local agency."

open meeting requirements. Because the Operations Committee is an advisory committee composed solely of Board members numbering less than a quorum of the Board, we hold that the committee is not a "legislative body" pursuant to the provisions of section 54952.3 and is thereby excluded from the open meeting requirements of the Act.

## I. FACTS

The Orange County Employees Retirement System is governed by a nine-member Board. Five members of the Board constitute a quorum. The Board is a "local agency" and a "legislative body" under sections 54951 and 54952 respectively. The Board is therefore subject to the open meeting requirements of the Brown Act. The chairman of the Board has created five advisory[3] committees—operations, benefit, investment, real estate, and liaison—each composed of four members of the Board. Some members serve on more than one committee. The committees' function is to review various matters related to the business of the Board and to make recommendations to the full Board for action. The Board considers the committees' recommendations in public meetings, at which time there is an opportunity for full public discussion and debate. The committees do not have any decisionmaking authority and act only in an "advisory" capacity.[4]

On June 18, 1991, the Operations Committee met to formulate a list of recommended changes to the Board's travel policy. Freedom Newspapers sought to attend the meeting but the committee denied permission on the ground that it was not subject to the open meeting requirements of the

---

[3]The parties do not dispute that these committees are properly described as "advisory."

[4]The only evidence concerning the composition and function of the committees is a declaration by the administrator of the retirement system. The declaration states:

"[¶] 4. . . . All of the committees of the Board of Retirement, including the Operations Committee, are comprised solely of members of the Board of Retirement. The Board of Retirement has nine members, and a quorum is five. However, none of the committees of the Board of Retirement are comprised of more than four members, and all committee members are also members of the Board of Retirement. . . . [¶] 5. The function of such committees is to review various matters related to the business of the Board of Retirement, and make recommendations to the full Board for action. The committees have not been delegated any decision-making authority. The committees act in an advisory capacity, and make recommendations to the full Board of Retirement. The full Board considers those recommendations in public meetings, at which time there is an opportunity for full public discussion and debate on those recommendations. [¶] 6. The committees are formed by the Chairman of the Board of Retirement. The Chairman determines what committees shall operate, and which members of the Board of Retirement shall serve on such committees. The Chairman has the authority to form new committees, abolish existing committees, or combine existing committees. There is no Board rule or regulation which prescribes the number of Board committees, or the duties of any such committee; it is up to the Chairman of the Board of Retirement to decide what committees shall be formed, and who will serve on them."

Brown Act. The next day, June 19, the full Board met in a public session at which the chairman of the Operations Committee read and explained the committee's recommendations. The press was in attendance, and there was public discussion among the Board's members about the recommendations. The Board ultimately voted eight to one in public session to accept the recommendations.

On the same day, Freedom Newspapers petitioned the trial court for a writ of mandate alleging that the Operations Committee is subject to the open meeting requirements of the Brown Act. The trial court denied the petition and entered judgment in favor of the Board. Freedom Newspapers appealed from that judgment, and the Court of Appeal reversed. We granted the Board's petition for review.

## II. DISCUSSION

The Brown Act was adopted to ensure the public's right to attend the meetings of public agencies. (§ 54950.)[5] The Act provides that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953.) As already noted, "legislative body" is defined in four sections of the Act, two of which pertain to the case before us. (§§ 54952, 54952.3.) Section 54952 provides that any committee or body on which officers of a local agency serve in their official capacity and which is supported by its appointing local agency is a "legislative body." (§ 54952.)[6] Section 54952.3 more specifically addresses "advisory" bodies: "As used in this chapter[,] 'legislative body' also includes any advisory commission, advisory committee or advisory body of a local agency, created by charter, ordinance, resolution, or by any similar formal action of a legislative body or member of a legislative body of a local agency. [¶] . . . [¶] *'Legislative body' as defined in this section does not include a committee composed solely of members of the governing body of*

---

[5]Section 54950 provides: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

[6]For the full text of section 54952, see *ante*, footnote 2.

*a local agency which are less than a quorum of such governing body."* (§ 54952.3,[7] italics added.)

The parties in this case disagree over the meaning of the explicit less-than-a-quorum exception contained in section 54952.3. The Board and its amici curiae, including the Attorney General, argue that an advisory committee that is excluded from the definition of "legislative body" under the exception is completely exempt from the open meeting requirements of the Act.[8]

In opposition, Freedom Newspapers and its amici curiae contend that the less-than-a-quorum exception in section 54952.3 merely exempts less-than-a-quorum committees from the special, relaxed procedural requirements of section 54952.3. According to Freedom, such committees remain subject to the stricter open meeting requirements that are generally applicable to "legislative bodies" under section 54952.

When interpreting a statute our primary task is to determine the Legislature's intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].)

Each party asserts that the language of section 54952.3 supports its view. Freedom reasons that, had the Legislature intended to exempt less-than-a-quorum advisory committees from the Act's open meeting requirements, it would have used language such as this: " 'legislative bodies' as defined in *this chapter* shall not include a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body." Because the Legislature used the words "in this section," instead of "in this chapter," the effect of the less-than-a-quorum exception, according to Freedom, is simply to exclude less-than-a-quorum committees from the terms of section 54952.3 rather than from other definitions of "legislative body" within the Act.

In contrast, the Board argues that, because section 54952.3 specifically refers to "any . . . advisory committee," that section alone governs advisory

---

[7] For the full text of section 54952.3, see *ante*, footnote 2.

[8] Like the Brown Act, the 1972 Federal Advisory Committee Act generally subjects advisory committees to open meeting requirements. (86 Stat. 770, as amended, 5 U.S.C.S. Appen. §§ 1-15.) However, the same act, as amended, also specifically exempts "any [advisory] committee which is composed wholly of full-time officers or employees of the Federal Government" from the open meeting requirements. (5 U.S.C.S. Appen. § 3(2)(C)(iii).)

committees for the purposes of the Act. To support its interpretation the Board relies, in part, on the traditional rules of statutory construction that specific statutes govern general statutes (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147]; see also *Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 750-753 [238 Cal.Rptr. 502]; *Kennedy* v. *City of Ukiah* (1977) 69 Cal.App.3d 545, 552 [138 Cal.Rptr. 207]) and that, to the extent a specific statute is inconsistent with a general statute potentially covering the same subject matter, the specific statute must be read as an exception to the more general statute (*Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610]; *Yoffie* v. *Marin Hospital Dist., supra,* 193 Cal.App.3d at p. 751). According to the Board, an advisory committee that is excluded from the definition of "legislative body" contained in section 54952.3 is not subject to the Act's open meeting requirements, even if it might otherwise satisfy the more general definition of "legislative body" contained in section 54952.

The Board also argues that Freedom's interpretation of section 54952 would deprive sections 54952.2 and 54952.5, as well as the less-than-a-quorum exception in 54952.3, of meaning. To explain, sections 54952.2 and 54952.5 purport to include only certain bodies within the definition of "legislative body." For the Legislature to have enacted those statutes would have made no sense if the governmental bodies described therein had already been included in the more general definition of "legislative body" contained in section 54952.

To be sure, one could argue that section 54952.3 might still have some meaning under Freedom's interpretation. Because section 54952.3 gives certain advisory bodies the benefit of procedural requirements that are less stringent than the requirements applicable to "legislative bodies" under section 54952, under Freedom's interpretation the exception contained in section 54952.3 for less-than-a-quorum advisory committees would have the effect of subjecting such committees to the stricter, generally applicable procedural requirements.

But Freedom's interpretation of section 54952.3 would also result in absurdity. If we construed section 54952.3 merely as exempting less-than-a-quorum advisory committees from the less rigid procedural requirements in that section, even a temporary, ad hoc advisory committee composed solely of less than a quorum of the governing body would be subject to all of the Brown Act's generally applicable procedural requirements, including the requirement that committees hold "regular" meetings. (§ 54954.) Yet a

temporary, ad hoc committee, by definition, does not hold "regular" meetings. We will not give a statute an absurd interpretation. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Gage* v. *Jordan* (1944) 23 Cal.2d 794, 800 [147 P.2d 387]; *Lynch* v. *State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 114 [210 Cal.Rptr. 335].)

Freedom attempts to avoid the absurdity by characterizing the Operations Committee as a standing committee. However, neither section 54952 nor section 54952.3 distinguishes between ad hoc advisory committees and standing advisory committees. We will not add to a statute a distinction that has been omitted. (Code Civ. Proc., § 1858; see, e.g., *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].)

When a statute is ambiguous, as in this case, we typically consider evidence of the Legislature's intent beyond the words of the statute (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]) and look both to the legislative history of the statute and to the wider historical circumstances of its enactment (*ibid.*). An examination of the history of the Brown Act, both prior to and after the enactment of section 54952.3, shows that committees comprised of less than a quorum of the legislative body have generally been considered exempt from the Act's open meeting requirements.

In 1958 the Attorney General, interpreting the original version of section 54952,[9] concluded that "meetings of committees of local agencies where such committees consist of less than a quorum of the legislative body are not covered by the act." (*Secret Meeting Law*, 32 Ops.Cal.Atty.Gen. 240, 242 (1958).) The Attorney General reasoned that, "[i]n those cases the findings of such a committee have not been deliberated upon by a quorum of the legislative body and the necessity, as well as the opportunity, for full public deliberation by the legislative body still remains." (*Ibid.*)

Successive Attorneys General have consistently adhered to the view stated in the 1958 opinion. In 1968 the Attorney General wrote that "[w]e have consistently concluded that committees composed of less than a quorum of the legislative body creating them and not established on a permanent basis for a continuing function are not subject to the open meeting requirements of

[9]In 1958 section 54952 provided: "As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board or commission thereof." (Stats. 1953, ch. 1588, § 1, p. 3270.)

that Act. In view of the lack of any pronouncements on the parts of either the courts or the Legislature which would compel a different conclusion, our opinion remains unchanged." (Cal. Atty. Gen., Indexed Letter No. IL 68-106 (Apr. 29, 1968).)

More specifically, since the enactment of section 54952.3 the Attorney General has continuously recognized that advisory committees falling within the express less-than-a-quorum exception in section 54952.3 are not "legislative bodies" within the meaning of the Brown Act. (See, e.g., Cal. Atty. Gen., Indexed Letter No. IL 69-131 (June 30, 1969); Secret Meetings Laws Applicable to Public Agencies (Cal.Atty.Gen., 1972) pp. 6-8; *Closed Meetings*, 63 Ops.Cal.Atty.Gen. 820, 823 (1980); *Open Meeting Requirements*, 64 Ops.Cal.Atty.Gen. 856, 857 (1981).) The Attorney General's brief in this case supports the long-standing view of his office. ■ While the Attorney General's views do not bind us (*Unger* v. *Superior Court* (1980) 102 Cal.App.3d 681, 688 [162 Cal.Rptr. 611]), they are entitled to considerable weight (*Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420, 431 [15 Cal.Rptr. 717]). ■ This is especially true here since the Attorney General regularly advises many local agencies about the meaning of the Brown Act and publishes a manual designed to assist local governmental agencies in complying with the Act's open meeting requirements. (See, e.g., Open Meeting Laws (Cal.Atty.Gen., 1989).)

In 1961 the Legislature amended the Brown Act, not in response to the Attorney General's recognition of an implicit less-than-a-quorum exception, but in response to a judicial opinion that essentially eviscerated the Act by restrictively defining the terms "meeting" and "legislative body." The court in *Adler* v. *City Council* (1960) 184 Cal.App.2d 763 [7 Cal.Rptr. 805] (*Adler*) held that a city's planning commission did not violate the Brown Act when all but one of its members attended a dinner given a few days before the host's application to the commission for an amendment to the zoning law. The court held that "the Brown Act was not directed at anything less than a formal meeting of a city council or one of the city's subordinate agencies." (*Id.* at p. 770.) Misconstruing the Attorney General's 1958 opinion (*Secret Meeting Law*, *supra*, 32 Ops.Cal.Atty.Gen. 240), which addressed committees composed of less than a quorum of the governing body, the court also held that the Act did not apply to any committee of an advisory nature, whether or not composed of a quorum of the governing body. (*Adler*, *supra*, 184 Cal.App.2d at p. 771.)

In response to the *Adler* decision, the Legislature broadened the scope of the Brown Act the very next year. (Stats. 1961, ch. 1671, § 1, p. 3637,

amending §§ 54952 and 54957, and adding §§ 54952.5, 54952.6, and 54960.) Shortly after the 1961 amendments took effect, the Attorney General construed them as disapproving *Adler* on several points. (*Secret Meeting Law*, 42 Ops.Cal.Atty.Gen. 61 (1963).) Specifically, the Attorney General concluded that the 1961 amendments "disapproved *Adler's* restrictive inter--pretation of the word 'meeting' by recognizing that criminally prohibited legislative action may be taken at gatherings that fall far short of the ' "formal assemblages of the council sitting as a joint deliberative body" ' " and "repudiated that portion of the *Adler* decision which held that the act was not meant to apply to planning commissions or other bodies of an 'advisory' nature." (*Secret Meeting Law*, *supra*, 42 Ops.Cal.Atty.Gen., at pp. 64-65.)

In addition to the history set out above, the history of the Brown Act in the Legislature reflects a recognition of the implicit less-than-a-quorum exception and, after the consistent failure of proposals to abolish it, the codification of a limited version of that exception.

A 1963 bill would have abolished the exception by providing that "[a]ll meetings of any committee or subcommittee of a legislative body, *whether or not composed of a quorum of the members of the legislative body*, shall be open and public, and all persons shall be permitted to attend any meeting of such committee or subcommittee, except during consideration of the matters set forth in Section 54957." (Assem. Bill No. 2334 (1963 Reg. Sess.) § 2, italics added.) The bill did not pass.

The legislative history of section 54952.3, the provision at issue in this case, reveals another unsuccessful attempt to abolish the implicit less-than-a-quorum exception. Section 54952.3, enacted in 1968 (Stats. 1968, ch. 1297, § 1, p. 2444), extended the coverage of the Brown Act to certain advisory committees that were not previously covered. However, at the same time the Legislature rejected an alternative bill that would have abolished the implicit less-than-a-quorum exception by making all advisory committees subject to the full procedural requirements applicable to governing bodies. (Sen. Bill No. 717 (1968 Reg. Sess.).)[10] The bill that did pass (Assem. Bill No. 202 (1968 Reg. Sess.), codified as § 54952.3) thus appears to be a compromise, incorporating into the open meeting requirements of the Brown

---

[10]Senate Bill No. 717 would have amended section 54952 by adding the italicized words: "As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board, commission, *committee, advisory committee, or subcommittee* thereof, and shall include any board, commission, committee, or other body on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency, whether such board,

Act advisory committees that were not previously included within the Act, but relaxing the procedural requirements applicable to those committees and codifying a limited version of the implicit less-than-a-quorum exception.

To support its view that the committees excluded from the definition of "legislative body" in section 54952.3 were included in another definition of "legislative body," Freedom Newspapers relies on a communication by Assemblyman Hayes to the members of the Assembly discussing his reasons for drafting the less-than-a-quorum exception. Assemblyman Hayes claimed that " '[t]he reason [for enacting the less-than-a-quorum exception in section 54952.3] was that such committees of the governing body of a local agency are covered by another section of the Ralph M. Brown Act, Government Code Sec. 54952.' " (4 Assem. J. (1968 Reg. Sess.) p. 7163.) However, these comments offer little assistance in the interpretation of section 54952.3 because they do not necessarily reflect the views of other members of the assembly who voted for section 54952.3. (Cf. *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 801, fn. 12 [268 Cal.Rptr. 753, 789 P.2d 934]; see also *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371].)

Indeed, the Legislature's action in two respects since the 1968 enactment of section 54952.3 indicates its continuing understanding that advisory committees comprised solely of less than a quorum of the governing body are exempt from the open meeting requirements of the Act.

First, although legislative acquiescence is a weak indication of legislative intent (*People* v. *Escobar* (1992) 3 Cal.4th 740, 751 [12 Cal.Rptr.2d 586, 837 P.2d 1100]), we note that the Legislature has allowed the Court of Appeal's opinion in *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875 [144 Cal.Rptr. 568] to govern meetings of less-than-a-quorum advisory committees for the past 14 years.

The *Henderson* court squarely addressed the issue of whether an advisory committee consisting solely of governing board members, constituting less than a quorum of the board, was exempt from the open meeting requirements of the Act. (78 Cal.App.3d at pp. 880-883.) In *Henderson*, ad hoc advisory committees had been created for the purpose of advising the board of education about the qualifications of candidates for appointment to a vacant position. Each of the advisory committees was composed solely of members

commission, committee or other body is organized and operated by such local agency or by a private corporation." (Sen. Bill No. 717 (1968 Reg. Sess.), italics in original.)

of the governing body of the school district numbering less than a quorum of the governing body. The court considered whether the advisory committees had violated the Brown Act when they evaluated the candidates' qualifications and interviewed candidates in private sessions. (*Id.* at p. 877.) Finding that section 54952.3 provided an express exemption from the open meeting requirements of the Brown Act for advisory committees comprised solely of less than a quorum of the governing body, the *Henderson* court held that the advisory committees in that case were not subject to the Act. (78 Cal.App.3d at pp. 880-881.)

Secondly, and more importantly, the Legislature in 1992 attempted to extend the coverage of the Brown Act by limiting the coverage of the express less-than-a-quorum exception in section 54952.3 to ad hoc advisory committees. This legislation is the strongest indication that the current version of section 54952.3 excludes less-than-a-quorum advisory committees from the Act's open meeting requirements, rather than merely from the less-stringent procedural requirements in section 54952.3. On August 31, 1992, the California Legislature passed and sent to the Governor a bill amending the explicit less-than-a-quorum exception as follows: " 'Legislative body' as defined in this section does not include a *limited duration ad hoc committee* composed solely of members of the governing body of a local agency which are less than a quorum of the governing body *but does include any standing committee* of a governing body irrespective of its composition. For purposes of this section, 'standing committee' means a permanent body created by charter, ordinance, resolution, or by any similar formal action of a legislative body or member of a legislative body of a local agency and which holds regularly scheduled meetings." (Assem. Bill. No. 3476 (1991-92 Reg. Sess.) § 3, italics added.) The Governor vetoed this bill, reasoning that its economic impact would be too great in view of the state's fiscal outlook. In his veto message the Governor stated: "This bill would make a number of changes in the Ralph M. Brown Act relating to open meetings. It would *expand the number of local agencies subject to the law*, and expand notice, recordation, and recordkeeping requirements. . . . [¶] I cannot approve mandating expensive new requirements while we are unable to afford the ones on the books today." (Governor's veto message to Assem. on Assem. Bill No. 3476 (Sept. 20, 1992) Recess J. No. 24 (1991-1992 Reg. Sess.) p. 10271, italics added.)[11]

The Legislature's adoption of subsequent, amending legislation that is ultimately vetoed may be considered as evidence of the Legislature's understanding of the unamended, existing statute. (See *Eu* v. *Chacon* (1976) 16

---

[11]On October 10, 1993, the Governor signed into law Senate Bill No. 1140 (Stats. 1993, ch. 1138), which changes, as of April 1, 1994, the Brown Act's definition of "legislative body." Among other things, the new law amends section 54952 and repeals sections 54952.2, 54952.3, and 54952.5.

Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289]; see also *Irvine* v. *California Emp. Com.* (1946) 27 Cal.2d 570, 578 [165 P.2d 908].) The 1992 legislation reflects the Legislature's understanding that the current version of the explicit less-than-a-quorum exception in section 54952.3 excludes advisory committees, whether ad hoc or standing, composed solely of less than a quorum of the members of the governing body from the open meeting requirements of the Act.

The 1992 legislation "would [have] exclude[d] a limited duration ad hoc committee from the definition of legislative body but would [have] include[d] any standing committee, as defined, of a governing body irrespective of its composition." (See Legis. Counsel's Dig., Assem. Bill No. 3476 (1991-1992 Reg. Sess.).) Because the 1992 legislation retained the "in this section" language (§ 54952.3) and made no amendment to the general language in section 54952, the legislation would only make sense if the Legislature gave the words "in this section" the same meaning that the Board attributes to them in the current statute. If the Legislature had intended "in this section" to be interpreted as narrowly as Freedom suggests, the 1992 legislation would have had this bizarre result: Limited duration, ad hoc, advisory committees would have been subject to the full set of procedural requirements applicable to governing bodies, including the requirement of holding "regular meetings," but standing advisory committees would have received the benefit of the relaxed procedural requirements described in section 54952.3. This clearly could not have been the intended effect of the 1992 bill.

In view of these considerations, we find it more consistent with the legislative intent to construe the less-than-a-quorum exception contained in section 54952.3 as an exception to the definition of "legislative body," and thus one of several exceptions to the Brown Act's open meeting requirements,[12] rather than merely as an exception to the special procedural requirements of section 54952.3. This interpretation is consistent with the Act's

---

The newly amended section 54952 codifies an exception for less-than-a-quorum advisory committees in these words: "[A]dvisory committees, composed solely of the members of the legislative body which are less than a quorum of the legislative body are not legislative bodies, except that standing committees of a legislative body, irrespective of their composition, which have a continuing subject matter jurisdiction, or a meeting schedule fixed by charter, ordinance, resolution, or formal action of a legislative body are legislative bodies for purposes of this chapter." (§ 54952, subd. (b), as amended by Sen. Bill No. 1140 (1993-1994 Reg. Sess.), 1993 Stats., ch. 1138, eff. Apr. 1, 1994.)

This case does not present the issue whether the Operations Committee would be a "legislative body" under the new law. Accordingly, we express no opinion on the issue.

[12]Compare section 54956.9 (legislative body may hold closed sessions to confer with legal counsel regarding pending litigation); section 54957 (legislative body may hold closed

purpose of ensuring that the "actions [of public agencies] be taken openly and that their deliberations be conducted openly." (§ 54950.) By definition, the exception applies only to an advisory committee that consists solely of members of the legislative body that created it but not enough members to constitute a quorum or, thus, to act as the legislative body. Accordingly, before any action can be taken on such a committee's recommendations the entire legislative body, which includes the members of the advisory committee, must conduct further, public deliberations. (§ 54952.) In this way the Act reasonably accommodates the practical needs of governmental organizations while still protecting the public's right to know.

### III. DISPOSITION

Since the Operations Committee is composed solely of members of the governing body of a local agency numbering less than a quorum of the governing body, the committee's meeting on June 18, 1991, was not subject to the open meeting requirements of the Brown Act. Accordingly, the judgment of the Court of Appeal is reversed.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—Although I have no quarrel with the result reached by the majority, I find that virtually all their reasoning has been rendered moot by the enactment of the 1993 legislation quoted in footnote 11 of the majority opinion. (Stats. 1993, ch. 1138.)

That legislation answers the question we took this case to resolve, i.e., whether advisory committees composed solely of members of a legislative body are themselves "legislative bodies" for purposes of the Ralph M. Brown Act. (Gov. Code, § 54950 et seq.) The 1993 legislation plainly declares they are not, unless they qualify as "standing committees" therein defined.

In light of this development the majority opinion has become an anachronism; indeed, the 1993 legislation repeals the very statute discussed by the majority at length. (Gov. Code, § 54952.3.) Because it is not our responsibility to offer advisory opinions on repealed statutes, I would dismiss review in this case as improvidently granted.

sessions to confer with Attorney General, district attorney, sheriff, chief of police, or their respective deputies, on matters posing a threat to the security of public buildings); section 54957.6 (legislative body may hold closed sessions to discuss matters related to employee compensation and collective bargaining).

**KENNARD, J.**—I dissent.

California's Open Meeting Law[1] requires legislative bodies to give notice of the time and place of their meetings and to make such meetings open and accessible to the public. The stated purpose of this law is to assure that Californians can be fully informed about the legislative decisionmaking process of elected and appointed officials. Under the majority opinion, however, a legislative body is entirely free to conduct the public's business in private session, shielding its decisionmaking process from scrutiny by the press or public, simply by dividing itself into various "standing committees" whose membership does not comprise a quorum of the full legislative body.[2] The majority reaches this result by interpreting the Brown Act to exempt such committees from compliance with *any* of the Act's requirements. The majority's interpretation contorts the statutory language and contravenes the goal of this state's Open Meeting Law.

I

This case arose out of the June 18, 1991, meeting of the "Operations Committee" of the Board of Directors of the Orange County Employees Retirement System. The Board administers $1.5 billion, consisting of moneys derived from the county's general fund as well as those contributed by employees. The "Operations Committee" is one of five standing committees that report to the full Board. The membership of the Operations Committee (and of each of the other standing committees) consists of four of the nine Board members—one person less than a quorum of the Board.

The purpose of the June 18, 1991, meeting was to reevaluate the Board's travel policy—a policy that had engendered substantial controversy after it was reported that some Board members had used public funds to tour Europe, assertedly in connection with Board investments. A reporter for the Orange County Register, a daily newspaper, tried to attend the meeting but was refused entry.

The next day, the newspaper's parent company, Freedom Newspapers, Inc., petitioned the superior court for a writ of mandate, seeking access to future meetings of the Operations Committee. The superior court denied the

[1]This law, which is codified in Government Code section 54950 et seq., is also known as the Ralph M. Brown Act, and will hereafter be referred to alternatively as the "Brown Act" or the "Act."

[2]Of course, in the case of a "committee" whose members make up a quorum or more-than-a-quorum of the membership of the full governing body, the committee would not be a "committee" at all; it would be *the* governing body.

petition. The Court of Appeal reversed, however, concluding that the Operations Committee was a "legislative body of a local agency" whose meetings were consequently required by the Brown Act to be "open and public." (Gov. Code, § 54953.)[3]

This court granted the Board's petition for review and now reverses the judgment of the Court of Appeal.

As I shall explain, the Court of Appeal reached the correct result.

## II

In the preamble to the Brown Act, the Legislature expressed the intent underlying the Act: "[T]he Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950.)

Consistent with this stated legislative intent, the Act requires that all meetings of legislative bodies of local agencies "be open and public" and that all persons "be permitted to attend" such meetings. (§ 54953.) The Act does, however, permit legislative bodies to discuss in "closed session" certain sensitive topics, such as pending litigation and personnel matters.[4]

The Act also requires "legislative bodies" to conduct "regular" meetings (§ 54954) and abide by certain rules pertaining to adjournment or continuance of such meetings (§§ 54955, 54955.1). Additional requirements are posting the agenda of each regular meeting, acting only on items listed on the posted agenda (§ 54954.2), and giving written notice one week before

[3]Further undesignated statutory references are to the Government Code.
[4]The Act permits closed session meetings when an agency discusses a license application by someone with a criminal record (§ 54956.7), or meets with its negotiator regarding the price and terms acceptable to the agency in a real property transaction (§ 54956.8), or discusses pending litigation with legal counsel (§ 54956.9), or participates in a joint agency meeting about insurance pooling, tort liability losses, or workers' compensation liability (§ 54956.95), or discusses employee wages and benefits with its labor negotiator (§ 54957.6), or participates in meetings regarding multijurisdictional drug law enforcement (§ 54957.8).

each regular meeting to anyone requesting such notice (§ 54954.1). The Act does allow for special meetings, but only if they are preceded by a 24-hour written notice. (§ 54956.)

The Act defines "legislative bodies" broadly. The term includes "the governing board, commission, directors or body of a local agency, or any board or commission thereof" as well as "any board, commission, committee, or other body on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency . . . ." (§ 54952.) The term also applies to "any board, commission, committee, or similar multimember body which exercises any authority of a legislative body of a local agency" (§ 54952.2), as well as to "planning commissions, library boards, recreation commissions, and other permanent boards or commissions of a local agency" (§ 54952.5).

The "Operations Committee" of the Board of Directors of the Orange County Employees Retirement System, as a "committee . . . on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency," qualifies as a "legislative body" within the meaning of section 54952, thus making it subject to the Brown Act's "open meeting" requirements. The issue in this case is whether the Operations Committee is exempted by another, more specific, provision of the Act, section 54952.3, from holding meetings open to the public.

Section 54952.3 provides for less stringent notice requirements for meetings of "any advisory commission, advisory committee or advisory body of a local agency, created by charter, ordinance, resolution, or by any similar formal action of a legislative body or member of a legislative body of a local agency." Under this section, an advisory commission, committee or body is a "legislative body" for purposes of the *open meeting* requirements of the Act. Such a legislative body can, however, elect between giving 24-hour written notice of its meetings or providing by rule or bylaw for its meetings to be held at a regular time; "[n]o other notice of regular meetings is required." (§ 54952.3.)

Section 54952.3 further provides that a " '[l]egislative body' as defined in this section does not include a committee composed solely of members of the governing body of a local agency which are *less than a quorum* of such governing body." (Italics added.) It is on this italicized phrase that the majority rests its conclusion that advisory committees made up only of members of the full governing body but "less than a quorum" of that body

are exempt from any of the requirements of the Brown Act. Thus, under the majority's interpretation, the Operations Committee was free to conduct its business in private.

I disagree with the majority's interpretation of section 54952.3's "less-than-a-quorum" provision. In my view, this provision by its express terms excludes those advisory committees composed solely of members of the full governing body of the local agency only from the "relaxed" notice requirements of section 54952.3, thereby making such advisory bodies subject to the more rigid requirements that govern legislative bodies generally.

My interpretation of the "less-than-a-quorum" provision is compelled by the plain language of section 54952.3, which must be the starting point for this statutory interpretation. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) After specifying that advisory commissions or committees are "legislative bodies" for purposes of the Brown Act, section 54952.3 next describes the less stringent procedural requirements for the meetings of such advisory bodies. It then states that " '[l]egislative body' *as defined in this section* does not include a committee composed solely of members of the governing body of the local agency which are less than of quorum of such governing body." By the limiting language, "as defined in this section," the provision carves out an exception from section 54952.3's definition of "legislative body" (and thus from the section's less stringent notice requirements) for an advisory committee composed solely of members of the governing body of the local agency who comprise less than a quorum of the local agency's full membership.

Therefore, in this case the Operations Committee of the Board of Directors of the Orange County Employees Retirement System, as an advisory committee composed solely of members of the full governing body of the local agency (the Board), is not a "legislative body" for purposes of the relaxed notice requirements of section 54952.3. Rather, as I explained earlier, the Operations Committee meets section 54952's definition of "legislative body" as being a "committee . . . on which officers of a local agency serve in their official capacity as members and which is supported in whole or in part by funds provided by such agency . . . ." As such, the Operations Committee is subject to the full force of the Brown Act. Most important, the committee must conduct its business in public.

To require an advisory committee that, as here, is comprised of individuals who are members of the governing body to which the committee reports to conduct public meetings would further the Legislature's stated intent that

"the people's business" be conducted openly, and that both the "actions" and the "deliberations" of government be open to the press and public. Even though the Operations Committee cannot itself bind the full Board by "actions" such as adopting a proposal or enacting a rule (which would require a majority vote of the full Board), it can and does "deliberate." "Deliberation" is defined as "the process . . . of thoughtful and lengthy consideration" or as "formal discussion and debate on all sides of an issue." (American Heritage Dict. of the English Language (1980) p. 349.) Indeed, to best assure that government decisions follow thoughtful and lengthy consideration or debate of all sides of an issue, the Brown Act invites the public to witness that whole process.

A standing committee's reconsideration of a significant policy that affects the public's trust and confidence in its government officials—such as the Board's travel policy here—necessarily involves deliberation. Yet, under the majority's interpretation of section 54952.3, this deliberation can take place in private session outside the scrutiny of the public. And when, as in this case, the makeup of the standing committee recommending a policy change is just one member short of a quorum of the full governing body, and only one additional vote is needed to make the recommended change, there may be little further debate or deliberation on the issue by the full Board. In that event, the public is deprived of its right to witness the deliberative processes of government. Indeed, under the majority's reading of section 54952.3, any local agency wishing to keep its deliberative processes from the public can effectively do so by referring controversial issues to standing committees comprised of one member less than a quorum.

The majority's interpretation of section 54952.3 rests first on its conclusion that construing section 54952.3 to exempt from the less stringent procedural requirements specified by that section *all* less-than-a-quorum advisory committees composed solely of members of the governing body would "result in absurdity" by making even temporary, ad hoc advisory committees subject to the Brown Act's "generally applicable procedural requirements," including that set out in section 54954 of holding "regular" meetings. (Maj. opn., *ante*, at p. 827.) But to require a temporary, ad hoc advisory committee to conduct its meetings at a regular time seems far less absurd than to permit, as the majority does here, a local agency to use standing committees to shield discussion and deliberation on controversial issues from public scrutiny.[5]

The majority relies also on opinions by the Attorney General (which the majority admits do not bind this court) and on a series of failed legislative

---

[5]Fortunately, the majority's opinion, though misguided, will be short-lived. New legislation (Stats. 1993, ch. 1138), which changes the Brown Act's definition of "legislative body"

efforts to amend the Brown Act. But we need not turn to unpassed or vetoed legislation to discern the Legislature's intent. The Legislature has made its intent plain in the preamble to the Brown Act, which expressly states that to ensure that Californians can remain informed and "retain control" over their own government, legislative deliberations must be conducted openly. "Vital" to the functioning of any democratic society is "an informed citizenry." (*John Doe Agency* v. *John Doe Corp.* (1989) 493 U.S. 146, 152 [107 L.Ed.2d 462, 110 S.Ct. 471].) Consistent with our Legislature's intent, I would affirm the Court of Appeal's judgment directing that the Board allow members of the press and the public to attend "its regular committee meetings," including those of its Operations Committee.

---

effective April 1, 1994, draws a distinction between "ad hoc" and "standing" advisory committees, and specifies that the latter, to the extent they "have a continuing subject matter jurisdiction," are covered by the Brown Act's "open meeting" requirements. (§ 54942, subd. (b), as amended by Sen. Bill No. 1140 (1993-1994 Reg. Sess.), Stats. 1993, ch. 1138, § 3, eff. Apr. 1, 1994.)