126 Cal.Rptr.2d 923 (2002)
103 Cal.App.4th 913
WASATCH PROPERTY MANAGEMENT, Plaintiff and Respondent,
v.
Syrian DEGRATE, Defendant and Appellant.
No. D039656.
Court of Appeal, Fourth District, Division One.
November 19, 2002.
As Modified December 16, 2002.
Review Granted January 29, 2003.
*924 Legal Aid Society of San Diego, Inc., Bernadette E. Probus for Defendant and Appellant.
Catherine Bishop, Oakland, for National Housing Law Project; R. Mona Tawatao, Pacoima, and Erin Farley for Legal Services of Northern California; David Pallack, Pacoima, for Neighborhood Legal Services of Los Angeles County; Susanne Browne, Long Beach, for Legal Aid Foundation of Los Angeles; Ilene J. Jacobs, Marysville, for California Rural Legal Assistance as Amici Curiae on behalf of Defendant and Appellant.
Kimball, Tirey & St. John, Patricia Tirey and Gary D. Urie, San Diego, for Plaintiff and Respondent.
Heidi Poppe for California Apartment Association as Amicus Curiae on behalf of Plaintiff and Respondent.
O'ROURKE, J.
Syriah Degrate, a "Section 8"[1] tenant, appeals a judgment in an unlawful detainer action in favor of Wasatch Property Management (Wasatch).[2] Degrate contends 1) the 90-day notice provision of Civil Code section 1954.535[3] applies to non-rent control tenancies and 2) the lessor was required to provide notice of good cause in order to terminate the lease. We agree and reverse the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND
On May 26, 2000, Degrate entered into a six-month lease with Creekside Villa Holdings (Owner) that was to terminate on October 31, 2000, but would thereafter be renewed month to month. The lease provides in part: "[DJuring the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy [for specified grounds]."
On June 1, 2000, the Owner also entered into a Housing Assistance Payments (HAP) contract with the San Diego Housing Commission. Provision 4(b)(1) of the HAP contract provides: "The HAP contract terminates automatically if the lease is terminated by the owner or the tenant."
On January 31, 2001, Wasatch served notice to Degrate that her tenancy would terminate on March 2, 2001, pursuant to 42 United States Code section 1437f, (d)(l)(B)(ii). On March 5, Wasatch filed an unlawful detainer complaint. On April 11, the court filed its memorandum of decision in favor of Wasatch and on May 1 filed the unlawful detainer judgment. On May 24, the court denied Degrate's motion to vacate the judgment, holding section 1954.535 applies only in a rent control jurisdiction. On August 13, the court filed an order staying execution of the judgment and writ of possession pending appeal.
Degrate appealed the judgment to the appellate division of the superior court. On March 6, 2002, the appellate division of the superior court reversed the trial court's decision because it found Wasatch did not provide Degrate with notice of good cause to terminate the lease, as required by the lease and the HAP contract.
*925 The appellate division affirmed the trial court's holding that section 1954.535 applies only in a rent control jurisdiction. The same day, the appellate division granted Degrate's motion to certify the matter for transfer to this court pursuant to California Rules of Court, rule 63. Transfer of the appeal to this court was ordered on March 21.

DISCUSSION

I. Section 1951535

We agree with Degrate's contention that section 1954.535 applies in all jurisdictions, regardless of whether the jurisdiction has enacted a rent control ordinance. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826, 25 Cal.Rptr.2d 148, 863 P.2d 218.)
Section 1954.535 provides as follows: "Where an owner terminates or fails to renew a contract or recorded agreement with a governmental agency that provides for rent limitations to a qualified tenant, the tenant or tenants who were the beneficiaries of the contract or recorded agreement shall be given at least 90 days' written notice of the effective date of the termination and shall not be obligated to pay more than the tenant's portion of the rent, as calculated under the contract or recorded agreement to be terminated, for 90 days following receipt of the notice of termination of nonrenewal of the contract."
Because section 1954.535 is placed under the Civil Code chapter entitled "Residential Rent Control," Wasatch and its amicus curiae, California Apartment Association (CAA), contend section 1954.535 is applicable only to rent control jurisdictions. We reject this contention because it is well settled that "[t]itle or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute." (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 602, 7 Cal.Rptr.2d 238, 828 P.2d 140; In re Halcomb (1942) 21 Cal.2d 126, 130,130 P.2d 384.)
We also reject Wasatch's contention that the placement of section 1954.535 within the Costa-Hawkins Rental Housing Act (Costa-Hawkins) (§ 1954.50 et.seq.) limits its applicability to rent control jurisdictions. Wasatch and CAA rely on legislative history to support their conclusion that Costa-Hawkins, as enacted, was designed to deal with issues arising in rent control jurisdictions. However, section 1954.535 was not enacted as part of Costa-Hawkins, but was enacted four years later as part of Senate Bill No. 1098 (SB 1098).
SB 1098 addresses various, unrelated issues in landlord tenant law. It contains six parts: SB 1098 section 1 allows tenants to invite others into their homes to participate in a tenant's association or to discuss tenants rights. (§ 1942.6.) SB 1098 section 2 amended section 1954.53, a portion of Costa-Hawkins, to reduce the ability of an owner in a rent control jurisdiction to increase rents by opting out of the Section 8 program. SB 1098 section 3 added section 1954.535. SB 1098 sections 4, 5, and 6 amended the California Fair Housing and Employment Act (§ 12900 et seq.) to prevent discrimination on the basis of income. (Stats. 1999, ch. 590, § 2, No. 9 West's Cal. Legis. Service, pp. 3387-3399.) Although section 1954.535 and the amendment of section 1954.535 are the two portions of SB 1098 that are codified within Costa-Hawkins, the Legislature clearly distinguished the applicability of these two sections. *926 Unlike the language of section 1945.535, which makes no mention of rent control, the language of section 1954.53, subdivision (a)(1)(A), a section added by SB 1098, limits its applicability to rent control jurisdictions.[4] Therefore, the Legislature did not rely upon the placement of these statutes but instead used the language of the statutes to specify which sections of SB 1098 concern rent control. For this reason, we find section 1954.535's placement within the Costa-Hawkins Act "too slender a reed to support ... an inference" that the Legislature intended the section to apply only in rent control jurisdictions. (People v. Garfield (1985) 40 Cal.3d 192, 200, 219 Cal.Rptr. 196, 707 P.2d 258.)
The legislative history of SB 1098 supports this interpretation. In the legislative analyses and comments from April to August 1999, the summary of the proposed bill separates the amendments to section 1954.53 from section 1954.535 and limits section 1954.53 to rent control jurisdictions, but does not so limit section 1954.535.[5] (Sen. Com. on Judiciary, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended April 7, 1999, p. 1; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of SB 1098 (1999-2000 Reg. Sess.) as amended April 7, 1999, pp. 1-2; Assem. Com. on Judiciary, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended July 7, 1999, p. 1; Sen. Rules Com, Off. of Sen. Floor Analyses, Unfinished Business, SB 1098 (1999-2000 Reg. Sess.) as amended August 31, 1999, p. 2.)
For example, in the first analysis of the bill before the Senate Judiciary Committee, the description of the amendments to section 1954.53 begins as follows: "For housing units in a rent control jurisdiction subject to Costa-Hawkins Rental Housing Act, which provides for `decontrol' when the unit is vacated voluntarily ...." (Sen. Com. on Judiciary, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended April 7, 1999, p. 1.) In contrast, the description of section 1954.535 makes no mention of rent control: "The bill would require a landlord to give Section 8 tenants at least 90 days written notice of the effective date of the owner's termination or nonrenewal of a `Section 8' housing agreements, and would provide that the affected tenant would not have to pay more than the tenant's portion of the rent, for 90 days following receipt of the notice of termination or nonrenewal." (Sen. Com. on Judiciary, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended April 7, 1999, p. 1.) There is also no mention of rent control in the other sections of SB 1098 that grant tenants the right to invite guests to discuss tenant issues and prohibit discrimination on the *927 basis of income. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, SB 1098 (1999-2000 Reg. Sess.) as amended August 31, 1999, p. 2.)
The legislative history shows that the purpose of section 1954.535 is to allow Section 8 tenants enough time to find suitable replacement housing: "Proponents assert that the current requirement of 30 days notice is insufficient time for a Section 8 tenant to find replacement income and housing when the property decides to no longer accept Section 8 housing vouchers, thereby forcing the tenant to move. They assert that this proposal, requiring 90 days notice of the effective date of the landlord's termination or nonrenewal of a Section 8 agreement and freezing the tenant's rent for that period, does not impose an undue burden on the property owner. The only burden is to advise the affected tenants of the owner's decision 60 days earlier, thereby giving the affected tenants more time to prepare. This is fair, assert the proponents, given the tight market for low-income housing and the unique relationship between the Section 8 tenant and his or her landlord." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of SB 1098 (1999-2000 Reg. Sess.) as amended April 7, 1999, p. 5; Assem. Com. on Judiciary, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended July 7, 1999, p. 6.) Thus, the proponents of section 1954.535 were not concerned with rent control but instead with the tight housing market and the unique relationship between Section 8 tenants and their landlords.
We reject CAA's contention that the language in the Legislative Counsel's Digest reveals the Legislature's intent to limit section 1954.535 to rent control jurisdictions. The first section of the Legislative Counsel's Digest divides the contents of SB 1098 into four paragraphs. Section 1954.535 is described in the second paragraph,[6] which reads as follows: "This bill would specify that termination or nonrenewal of a specified rent limitation contract with a governmental agency constitutes a change in the terms of the tenancy for that purpose, and would require 90 days' written notice to the tenant of the termination." (Legis. Counsel's Dig., Stats.1999, ch. 590, italics added.)
CAA contends that because the words "for that purpose" relate back to the prior paragraph that discusses Costa-Hawkins, section 1954.535 is applicable only in rent control jurisdictions. We do not agree. The sentence is composed of two verb phrases beginning with "would specify" and "would require," which are separated by a comma and the conjunction "and."
*928 The comma, placed in front of the conjunction "and," clearly separates the first verb phrase from the second verb phrase. The first verb phrase, which contains "for that purpose," refers to section 1954.53, subdivision (a)(1), which SB 1098 amended by adding the second, underlined sentence: "(1) The previous tenancy has been terminated by the owner by notice pursuant to Section 1946 or has been terminated upon a change in the terms of the tenancy noticed pursuant to Section 827, except a change permitted by law in the amount of rent or fees. For the "purpose of this paragraph, the owner's termination or nonrenewal of a contract or recorded agreement with a governmental agency that provides for a rent limitation to a qualified tenant, shall be construed as a change in the terms of the tenancy pursuant to Section 827. (§ 1954.53, subdivision (a)(1), as amended by Stats.1999, ch. 590, § 2, No. 9 West's Cal. Legis. Service, pp. 3388, italics added.) "For that purpose" does not modify the second verb phrase, which describes section 1954.535.
Finally, we reject Wasatch's contention that even if section 1954.535 applies to jurisdictions that do not have rent control ordinances, it does not apply in this case because the owner did not terminate the HAP contract. By its terms, section 1954.535 applies only where "an owner terminates or fails to renew a contract ... with a governmental agency that provides for rent limitations to a qualified tenant ...." In this case, the owner terminated the lease with the tenant rather than the HAP contract with the San Diego Housing Commission. However, provision 4(b)(1) of the HAP contract provides "The HAP contract terminates automatically if the lease is terminated by the owner or the tenant." Because the owner terminated the HAP contract by terminating the lease, section 1954.535 applies.

II. Written Notice of Good Cause

We agree with Degrate's contention that Wasatch was required to give notice of good cause under the provisions of the lease agreement. Section 8, paragraph b of the Tenancy Addendum to the lease reads as follows: "Grounds. During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:[¶] (1) Serious or repeated violation of the lease; [¶] (2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises; [¶] (3) Criminal activity or alcohol abuse (as provided in paragraph c); or [¶] (4) Other good cause (as provided in paragraph d)."
The lease also provides: "After the initial lease term, such good cause includes: [¶] (a) The tenant's failure to accept the owner's offer of a new lease or revision; [¶] (b) The owner's desire to use the unit for personal or family use or for a purpose other than use as a residential rental unit; or [¶] (c) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unity, the owner's desire to rent the unit for a higher rent.)" (Tenancy Addendum, section 8, paragraph (d)(3).)
Wasatch contends that because Congress amended Section 8 to delete the good cause requirement after the initial term of the lease (the "endless lease" provision), it was not required to give Degrate notice of good cause to terminate her tenancy at the end of an extension term. California law and federal Section 8 law require that the lessor give written notice *929 in order to amend a lease. (Civ.Code, § 827; 24 C.F.R. § 982.308, (g)(1); 42 U.S.C. § 1437f, (o)(7)(E).) Because Wasatch failed to amend the lease to conform to the changes in Section 8 law, it was required to provide Degrate with notice of good cause as provided in the lease agreement.

DISPOSITION
The judgment is reversed. Respondent to bear costs on appeal.
WE CONCUR: HUFFMAN, Acting P.J., and HALLER, J.
NOTES
[1] Section 8 is a federal program providing financial assistance to low-income tenants and is codified as 42 United States Code section 1437f.
[2] Degrate appealed to the appellate division of the superior court, which reversed the trial court. This court ordered transfer of the appeal after the appellate division certified it for transfer.
[3] All further statutory references are to the Civil Code unless otherwise specified.
[4] "In a jurisdiction that controls by ordinance or charter provision the rental rate for a dwelling or unit, an owner who terminates or fails to renew a contract or recorded agreement with a governmental agency that provides for a rent limitation to a qualified tenant shall not be eligible to set an initial rent for three years following the date of the termination or nonrenewal of the contract or agreement. For any new tenancy established during the three-year period, the rental rate for a new tenancy established in that vacated dwelling or unit shall be at the same rate as the rent under the terminated or nonrenewed contract or recorded agreement with a governmental agency that provided for a rent limitation to a qualified tenant, plus any increases authorized after the termination or cancellation of the contract or recorded agreement." (§ 1954.53, subdivision (a)(1)(A), as amended by Stats.1999, ch. 590, §§ 2, 3, No. 9 West's Cal.Legis. Service, pp. 3388-3390, italics added.)
[5] Only the Assembly Committee on Appropriations Report does not follow this format. However, that report discusses only the amendments to section 1954.53 and not the other sections of SB 1098. (Assem. Com. on Appropriations, analysis of SB 1098 (1999-2000 Reg. Sess.) as amended July 8, 1999.)
[6] The first section of the Legislative Counsel's Digest, with the exception of the second paragraph, reads as follows: "The Costa-Hawkins Rental Housing Act authorizes an owner of residential real property to establish the initial and all subsequent rental rates for a dwelling or a unit if any one of specified facts is true and the initial rental rate for a dwelling or unit where a residential rent control ordinance applies, except where, among other conditions, the previous tenancy has been terminated pursuant to notice by the owner or upon a change in the terms of the tenancy. [¶] ... [¶] The bill would revise provisions making inapplicable the owner's authority to establish the rental rate when a citation has been issued for code violations, and for a 3year period when an owner terminates or fails to renew a contract or recorded agreement with a governmental agency that provides for a rent limitation, except as specified. [¶] The bill would provide that a person entering real property during certain hours or circumstances, when invited by the occupant, to provide tenants' rights information or to participate in a specified association, shall not be civilly or criminally liable for trespass." (Legis. Counsel's Dig., Stats.1999, ch. 590.)