BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General.
THE CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM has requested an opinion on the following question:
Would the Legislature's increase of the employers' contribution rate paid by school districts to the California State Teachers' Retirement System for its Defined Benefit Program cause an increase in the obligation of the state to fund public education under the terms of section 8 of article XVI of the Constitution?
 CONCLUSION
The Legislature's increase of the employers' contribution rate paid by school districts to the California State Teachers' Retirement System for its Defined Benefit Program, by itself, would not cause an increase in the obligation of the state to fund public education under the terms of section 8 of article XVI of the Constitution.
 ANALYSIS
The question presented for resolution concerns the relationship, if any, between two different financial obligations to fund public education in California. The first involves the specific obligation of school districts to make contributions to the California State Teachers' Retirement System ("CalSTRS") for its Defined Benefit Program. The other obligation is the state's more general obligation to fund education programs under the terms of article XVI, section 8, of the Constitution. We conclude that, in the circumstances presented, a change in the first obligation would not cause a change in the second obligation.
The Legislature has enacted the State Teachers' Retirement Law (Ed. Code, §§ 22000-28101)[1] to provide a retirement benefits program for public school teachers throughout the state. Under this statutory scheme, specified monthly contributions are made to the State Teachers' Retirement Fund ("Fund") by school districts, teachers, and the state. School districts pay an amount equal to 8.25 percent of teacher salaries (§§ 22950, 22951), teachers pay an amount equal to 8 percent of their salaries (§ 22901), and the state contributes an amount equal to 2.017 percent of teacher salaries (§ 22955). If the Legislature were to mandate an increase in the amount paid by school districts to, for example, 10 percent of teacher salaries, would such an increase cause a change in what is known as the state's "Proposition 98" school funding obligation?
At the November 1988 General Election, California voters approved Proposition 98, amending section 8 of article XVI of the Constitution to provide a minimum level of state funding for the public school system — from kindergarten through the community college level. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1988) p. 78; White v. Davis (2002)108 Cal.App.4th 197, 219-221; County of Sonoma v. Commission on StateMandates (2000) 84 Cal.App.4th 1264, 1289-1290; California TeachersAssociation v. Hayes (1992) 5 Cal.App.4th 1513, 1517-1518.)[2]
Proposition 98 does not appropriate funds; rather, it provides formulas for determining the minimum to be appropriated every budget year by the Legislature. (County of Sonoma v. Commission on State Mandates,supra, 84 Cal.App.4th at p. 1290; accord, White v. Davis, supra,108 Cal.App.4th at pp. 220-221.) One of three formulas, commonly referred to as "tests," is applied annually depending upon varying economic and fiscal conditions. Proposition 98 "necessarily requires the Legislature to make a determinate appropriation of funds every year that meets or exceeds the specified minimum; otherwise, the second and third formulas cannot fix a minimum level for the following year." (White v. Davis,supra, 108 Cal.App.4th at p. 221.)
The Legislature has implemented the requirements of Proposition 98 in several ways. (§§ 41200-41209; see California Teachers Association v.Hayes, supra, 5 Cal.App.4th at p. 1519.) The one statute critical to our analysis is section 41204, subdivision (c), which provides:
 "Programs that existed in the 1986-87 fiscal year, and were not the functional responsibility of school districts or community college districts in that fiscal year, shall not be shifted to the responsibility or financial support of school districts or community college districts without appropriate corresponding adjustment to the calculations made pursuant to subdivision (b) of Section 8 of Article XVI of the California Constitution. . . ."
If the Legislature were to increase the contribution rate that school districts must pay to CalSTRS from 8.5 percent to 10 percent, for example, would such additional financial support constitute the "shifting" of a "program" to the "financial support of school districts," thus necessitating an "appropriate corresponding adjustment to the calculations made pursuant to subdivision (b) of Section 8 of Article XVI of the California Constitution" as required by section 41204, subdivision (c)? Since the state's Proposition 98 school funding obligation fluctuates annually in relation to General Fundrevenues (see County of Sonoma v. Commission on State Mandates,supra, 84 Cal.App.4th at p. 1290), the additional costs of school districts to contribute to CalSTRS would not cause an adjustment in the state's constitutional funding obligation unless the conditions of section 41204, subdivision (c), were present.
In our example, the overall structure of program responsibility would remain unchanged: CalSTRS would continue to bear the functional responsibility, and the financial support would continue to be provided by school districts, teachers, and the state. However, the school districts' amount of contributions would increase above the level of their contributions without the change in the rate.
In analyzing the terms of section 41204, we may rely on well-settled principles of statutory construction. "When interpreting a statute, our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers, Inc. v. Orange County Employees RetirementSystem (1993) 6 Cal.4th 821, 826.) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (Dyna-Med, Inc. v. Fair Employment and HousingCom. (1987) 43 Cal.3d 1379, 1387.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (Ibid.) "When the language is susceptible of more than one reasonable interpretation, . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (People v. Woodhead (1987) 43 Cal.3d 1002, 1008.)
Here, the Defined Benefit Program maintained by CalSTRS for public school teachers "existed in the 1986-87 fiscal year, and [was] not the functional responsibility of school districts or community college districts in that fiscal year." (§ 41204, subd. (c).) While the Defined Benefit Program must be considered a "program" for some purposes, is it a "program" for which, in our hypothetical example, financial support has been "shifted" to school districts for purposes of section 41204, subdivision (c)?
We have examined in detail the legislative history of section 41204, subdivision (c). (Stats. 1992, ch. 427, § 26; Stats. 1989, ch. 92, § 3.5; Stats. 1989, ch. 83, § 8; Stats. 1989, ch. 82, § 8.) The language was intended to prevent the state from cutting back on its benchmark fiscal support of education by transferring educational programs to the financial responsibility of school districts in a manner that would "circumvent the funding requirements of [Proposition 98]." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 198 (1989-1990 Reg. Sess.) as amended June 29, 1989, p. 2.)
Accordingly, we may resolve the issue presented by considering whether an increase in contributions made to the Fund by school districts would cause a net decrease in state funding for public education guaranteed under Proposition 98. The answer is "no." The state's responsibility for making contributions to the Fund would not be decreased or "shifted" to the districts in the proposed circumstances. The state's funding obligation under Proposition 98 would be unaffected by an increase in the school districts' payroll obligations. Since we are not given that the state's contributions to the Fund would be decreased as a result of the increased contributions made by the districts, we find the language of section 41204, subdivision (c), to be inapplicable here.
We conclude that an increase in the employers' contribution rate paid by school districts to CalSTRS for its Defined Benefit Program, by itself, would not cause an increase in the obligation of the state to fund public education under the terms of section 8 of article XVI of the Constitution.
[1] All further references to the Education Code are by section number only.
[2] In White v. Davis (2003) 30 Cal.4th 528, 579, the Supreme Court reversed the judgment of the Court of Appeal in White v. Davis,supra, 108 Cal.App.4th 197, but ordered that the Court of Appeal's opinion be published so that it could constitute citable authority for issues not considered by the Supreme Court.